ESTHER GUIDE YOCHIM, Plaintiff-Appellee, *v.* THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, Defendant-Appellant.

First District (1st Division)    No. 81-188

Opinion filed April 19, 1982.

John E. Angle, of Kirkland & Ellis, of Chicago, for appellant.

Lawrence A. Poltrock and Gregory N. Freerksen, both of De Jong, Poltrock & Giampietro, of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, the Board of Trustees of the Public School Teachers' Pension and Retirement Fund of Chicago, appeals from a decision of the circuit court reversing the finding of the Board of Trustees that the plaintiff's husband, now deceased, was not mentally incompetent at the time he elected to receive a regular pension from the pension fund. The issues raised on appeal are: (1) whether the trial court applied the appropriate standard of review in its reversal of the administrative finding; and (2) whether section 17—123 of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 17—123) requires the return of the decedent's contributions to the Pension Fund.

In May 1978, the plaintiff, Esther Guide Yochim, formally requested the Board of Trustees of the Public School Teachers' Pension and Retirement Fund of Chicago for a refund of her husband's contributions to the pension fund and tendered the $6,807.86 in pension payments that he had received before his death. She sought to establish that her husband's election to receive a regular pension was void by reason of incompetency and, therefore, his estate was entitled to a refund of his contributions. Plaintiff also requested survivor's benefits for herself of $300 per month. The board agreed to hear evidence on whether Dr. Yochim was mentally incompetent at the time he elected to receive a regular pension.

After two evidentiary hearings, the board unanimously voted to deny plaintiff's claim that she was entitled to a refund of her husband's contributions to the pension fund. The plaintiff filed this suit in the circuit court of Cook County seeking review of the board's action pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*). The trial court reversed the decision of the board and awarded the plaintiff a survivor's pension and the balance of decedent's contributions to the pension fund.

The plaintiff's husband, Dr. Ralph Yochim, taught in the Chicago public schools for 40 years. He had a Ph.D. in music and prior to his retirement he taught music at Lake View High School. His mandatory contributions to the pension fund totalled approximately $25,000. On May 23, 1977, Dr. Yochim, accompanied by his wife, visited the pension fund office and elected to receive a regular pension after his retirement at the close of the 1976-77 school year. On November 5, 1977, Dr. Yochim died of heart failure following surgery to remove a brain tumor. He was 61 years old.

The decedent's physician, Dr. John Mullan, testified on behalf of the plaintiff. Dr. Mullan is a neurosurgeon and chairman of the department of neurosurgery at the University of Chicago and director of the Brain Research Institute. He had been treating Dr. Yochim since 1973 when he operated on Dr. Yochim to remove a brain tumor. Dr. Mullan stated that it was not safe to remove the entire tumor and, therefore, the tumor would continue to grow and eventually require another operation. Although Dr. Yochim's physical condition improved substantially after the operation, Dr. Mullan believed that the return of his intellectual capacities in terms of concentration, memory and judgment was limited. Dr. Mullan wrote in 1974 that even though decedent returned to work, he imagined that Dr. Yochim was tolerated rather than appreciated.

The tumor began to grow and at the end of 1976 Dr. Mullan advised another operation. He testified that at that time decedent was slow to understand matters and took a long time to reach a decision. Dr. Mullan stated that decedent repeatedly changed his mind on whether to have the second operation and did not seem to understand the severity of his condition. He stated, however, that Mrs. Yochim was fully informed. Dr. Mullan stated that he saw the deceased in the spring of 1977 but that he did not remember or have records as to whether it was on or around May 23. He testified that as the tumor grew there was a corresponding deterioration in his physical and intellectual abilities. Dr. Mullan testified that Dr. Yochim's behavior was usually correct. He also stated that since the decedent was a quiet, intelligent-looking man, anyone meeting with him would not be able to recognize his mental incapacities. Finally, Dr. Mullan testified that, in his opinion, since the operation in 1973 Dr. Yochim was not capable of making a decision of significant import for himself or his family. On cross-examination, Dr. Mullan stated that there were no tests to determine the amount of pressure on Dr. Yochim's brain nor any tests to measure judgment. He stated that his comments on Dr. Yochim's mental capacity were subjective and based upon his personal observations. Dr. Mullan also said that he accepted Dr. Yochim's written consent to perform the 1977 operation.

Mrs. Yochim testified that in the months before her husband's retirement, his coordination and balance worsened. She stated that he could not competently write checks or pay bills. She stated that he had difficulty keeping school records such as attendance reports and that she believed that his co-workers must have helped him complete these reports. She also testified that he was unable to make simple decisions such as deciding what to order in a restaurant.

Mrs. Yochim described the two meetings she and her husband had with the director of the pension fund, Edna Fanning. Mrs. Yochim testified that they first met with Mrs. Fanning in October 1976. Mrs. Yochim stated that she told Mrs. Fanning that her husband had brain surgery and

was scheduled for another operation. They discussed Dr. Yochim's retirement and the various pension options available. On May 23, 1977, Dr. and Mrs. Yochim returned to the pension office and met with Mrs. Fanning. At this meeting Dr. Yochim elected to receive a regular pension. Mrs. Yochim testified that she completed the necessary forms and he signed them.

The principal of Lake View High School for the 1976-77 school year testified on behalf of the defendant. He stated that he had visited Dr. Yochim's classroom several times and had met with him on three or four occasions. He stated that Dr. Yochim seemed to be doing a satisfactory job of teaching and that he had no reports of unusual behavior by Dr. Yochim. On cross-examination, he admitted that his opinion of Dr. Yochim's teaching abilities was based partly on his knowledge of Dr. Yochim's outstanding reputation in the Chicago public schools.

Edna Fanning, executive director of the pension fund, testified that during her two meetings with Dr. Yochim, he asked sensible questions, he seemed very interested in the answers, and he appeared to understand them. She explained to Dr. Yochim that he had four options on retirement: a regular pension, a reversionary pension, deferment in applying for a pension, and severance from the pension fund through withdrawal of his contributions. She stated that Dr. and Mrs. Yochim were very thorough in their questioning until they completely understood the pension options. Another employee of the pension fund, Katherine Wellons, testified that she met with Dr. and Mrs. Yochim on May 23, 1977, during which time Dr. Yochim signed certain documents required for his pension application. She stated that Dr. Yochim's demeanor seemed normal and his questions were appropriate.

The board held that the plaintiff had failed to prove that the decedent was incompetent on May 23, 1977, and the circuit court reversed this decision finding that it was against the manifest weight of the evidence. The court ordered a refund of Dr. Yochim's contributions to the pension fund, less the amount of contributions attributed to the survivor's pension and the sum of pension payments he received before death. The refund, then, totalled $15,135.18. The court also awarded the plaintiff a survivor's pension and her right to this is not contested on appeal.

The defendant contends that the trial court exceeded the scope of review applicable to a final administrative decision by reweighing the evidence presented at the administrative hearing rather than limiting its review to a determination of whether the finding below was against the manifest weight of the evidence. (*Hodges v. Board of Trustees* (1979), 73 Ill. App. 3d 978, 392 N.E.2d 417.) The defendant also argues that the trial court incorrectly reasoned that lay testimony on competency must give

way to expert testimony. The defendant asserts that lay testimony on competency is entitled to equal weight with that of expert testimony.

■■ The plaintiff asserts that her medical testimony stands uncontradicted by the defendant because defendant's witnesses only testified to whether Dr. Yochim's behavior was normal. She argues that since defendant's witnesses did not offer an opinion on the competency of Dr. Yochim, nor contradict the medical testimony of Dr. Mullan, the board's rejection of Dr. Mullan's testimony was arbitrary and against the manifest weight of the evidence.

The Administrative Review Act provides, "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1977, ch. 110, par. 274.) The role of the reviewing court is limited to a determination of whether the findings of fact of the administrative agency are against the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) The reviewing court will not overturn agency findings unless they are without substantial foundation in the record. (*Hazelton v. Zoning Board of Appeals* (1977), 48 Ill. App. 3d 348, 363 N.E.2d 44.) We conclude that the trial court correctly applied this standard.

■■ Defendant is correct in asserting that the testimony of physicians on competency is not entitled to any greater weight than that of laymen (*In re Estate of Vardalos* (1974), 24 Ill. App. 3d 520, 360 N.E.2d 568). The value of an opinion on competency, however, is measured by the facts and circumstances which form reasonable ground for the witness' determination of mental capacity (*Vardalos*). The testimony of Dr. Mullan, a neurosurgeon and the decedent's treating physician, is uncontradicted in the record. The testimony of the defendant's witnesses support that of the doctor to the effect that Dr. Yochim appeared normal and asked numerous questions to hide his inability to comprehend what was being said. The record does not reveal that defendant's witnesses had sufficient contact with Dr. Yochim to support their testimony of apparent competency in the face of Dr. Mullan's medical knowledge of the deceased and his repeated opportunities to meet with the deceased. We conclude that the finding of the board of trustees is not supported by the record, and the trial court was correct in reversing its decision as against the manifest weight of the evidence.

■■ The decision of the trial court to award the plaintiff a refund of contributions in the sum of $15,135.18 is also supported by section 17—123 of the Illinois Pension Code, which provides in pertinent part:

"If a teacher dies (a) in service, (b) after resignation or (c) after retirement but before receiving any pension payment, his estate

shall be paid a refund of the amounts he contributed to the fund less (1) any former refund that has not been repaid, (2) the amount contributed for a survivor's pension in the event such pension is payable under Sections 121 and 122 of this Article and (3) pension payments received." (Ill. Rev. Stat. 1977, ch. 108½, par. 17—123.)

The defendant argues that we should not consider the statutory interpretation issue raised by the plaintiff because it was not raised below. The facts, however, do not support the defendant's contention. In a letter to the plaintiff's attorney dated May 26, 1978, the defendant raised the issue of the applicability of section 17—123 to the decedent.

The plaintiff contends that the intent of section 17—123 is to require a return of the decedent's contributions to the fund after deducting the pension payments received and the contributions for a survivor's pension. She argues that any other construction would render section 17—123(3) useless. The defendant contends that section 17—123 was intended to apply to the situation of a teacher who retires from the school system, draws a pension and then returns to active service. The defendant has conceded that under its interpretation a retired teacher would forfeit his entire contribution to the pension fund, accumulated over years of service, if he died after receiving one month's pension payment.

■■ We find no basis for the defendant's interpretation in the language of section 17—123. Where the meaning of a statute is certain and unambiguous, the only legitimate function of this court is to give it effect as written. (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227.) The provisions of section 17—123 are not so limited as the board suggests. We accept the construction adopted by the trial court which requires the return of decedent's contributions less the amount contributed for a survivor's pension and pension payments received.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

GOLDBERG and McGLOON, JJ., concur.