LAWRENCE WALL, Plaintiff-Appellant, v. POLICE PENSION BOARD OF THE VILLAGE OF SCHAUMBURG *et al.*, Defendants-Appellees.

First District (1st Division)   No. 88—0828

Opinion filed December 30, 1988.

Massucci, Blomquist, Brown & Judson, of Arlington Heights (Ernest R. Blomquist III and Brian S. Crowley, of counsel), for appellant.

Doss, Puchalski & Keenan, Ltd., of Chicago, and Law Offices of Cary J. Collins, of Hoffman Estates (Richard J. Puchalski and Cary J. Collins, of counsel), for appellees.

Illinois Police Pension Fund Association, of Palatine (Richard J. Reimer, of counsel), for *amicus curiae* Illinois Police Pension Fund Association.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Lawrence Wall, appealed to this court from an order of the circuit court of Cook County. The circuit court had affirmed an administrative determination of the Police Pension Board of the Village

of Schaumburg which denied plaintiff a job-related disability pension.

Plaintiff became a police officer with the Schaumburg police department on September 24, 1977. After nine years with the department, he applied to the Police Pension Board of the Village of Schaumburg (the Board) for a duty-related disability pension. In his application, plaintiff claimed he suffered from duty-related stress reactions.

The Board then conducted hearings pursuant to article 3 of the Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 3—101 *et seq.*). Plaintiff testified on his own behalf at the hearings. He told the Board that in the past few years as a police officer, he no longer had fun on the job and was unable to relax or enjoy himself. Plaintiff said that stress kept building, until as a result of the stress, he was finally suspended from the police force. Plaintiff did not think he would ever be able to wear a police uniform again because he did not feel he could handle the job anymore. He no longer wanted to accept the responsibility for other people's lives or face the constant pressure from the public because "nobody appreciates a cop."

Plaintiff told the Board that he was promoted from patrol officer to detective on May 20, 1982. Plaintiff's attorney claimed that it was at this time that plaintiff began to feel a pressure to perform. Plaintiff testified that in December 1983, he got into a fight with another detective, which ended when he punched the detective. Plaintiff said that this behavior was totally out of character for him. After this fight, plaintiff was transferred back to patrol officer, but there was no evidence that the transfer was related to the fight.

Plaintiff also testified that in September 1985, he returned a juvenile to her home because she was violating curfew, an act which he felt was positive and would be appreciated by the juvenile's family. When the juvenile's family reacted negatively to plaintiff, he felt he could not handle being a police officer any longer and walked off the job even though two hours remained on his shift. As he was walking out, one of his superiors stopped him and asked him what was going on. Plaintiff replied, "I can't handle it any more; this is bullshit; I'm trying to do my job, and now this lady is going to come in and beef; now I've got to go through an internal investigation; I can't handle it any more." His superior talked with him for several hours and persuaded him not to quit.

In February 1986, plaintiff experienced severe chest pains while on duty and went to Northwest Community Hospital. He was admitted to the hospital and there remained for five days. His doctor diagnosed plaintiff as having mild pleurisy, but found nothing else wrong

with him. Plaintiff claimed that these chest pains were the result of job stress. When he was released from the hospital, plaintiff returned to work.

Then, on June 12, 1986, plaintiff told his watch commander, Lt. Johnson, that he was experiencing severe emotional strain and could not continue to work. Lt. Johnson immediately placed plaintiff on emergency suspension. Plaintiff never resumed working as a police officer following this incident. In September 1986, plaintiff filed this claim for a job-related disability pension.

Plaintiff also presented various documents to support his claim of disability. The documents included some service evaluation ratings that his superiors had filled out on him which covered the years 1978 through 1986, excluding only 1983. Of the evaluations submitted, the first evaluation that contained an unfavorable remark concerning plaintiff's job performance was from 1984. While the evaluations from 1985 and 1986 also contained unfavorable remarks, even in those evaluations the favorable comments outnumbered the unfavorable comments.

Along with the evaluation service ratings, plaintiff submitted letters from various doctors. Dr. Frederick Reis and Dr. John Mitchell wrote a joint letter that said they had seen plaintiff on three occasions. The doctors stated that "[p]robably the most stressful event [for plaintiff] was his separation from his wife about 1½ years ago." The doctors felt that plaintiff may have been suffering from a major depression. They declined to speculate whether plaintiff's stress reaction was job related, but felt he was unable to return to work at that time (August 1986).

There was also a letter from Dr. Teas, dated September 30, 1986. Dr. Teas had examined plaintiff on one occasion. Dr. Teas' letter said that plaintiff was too emotionally disordered to return to work at that time. Dr. Teas believed the disorder might last for another three months and might even prevent plaintiff from returning to police work. Additionally, Dr. Teas said he felt that plaintiff's job as a police officer may have played a role in his disorder, but he also said that he could not state this with any certainty.

Finally, plaintiff filed a letter from Dr. Ghattas, dated October 16, 1986. Dr. Ghattas saw plaintiff on one occasion and diagnosed him as suffering from major depression. In his letter, Dr. Ghattas suggested a genetic factor behind plaintiff's depression and declined to draw a correlation between plaintiff's job and his depression. He said, however, that he would not totally rule out this correlation.

Plaintiff also called Dr. Ronald Martin to testify on his behalf at

the hearing before the Board. Dr. Martin testified that he was a clinical psychologist and that he focused his practice on stress, especially on police stress. According to Dr. Martin, various factors cause police stress, including the dangerousness of the job, which is juxtaposed against long periods of boredom; the fragmented nature of police work; the shift rotation; the bureaucracy of the police department; and the fact that a police officer must always present the public with an image of a competent police officer. Dr. Martin testified that these factors all combine to create a police stress, which is a greater stress than ordinary stress. Dr. Martin said, however, he could not testify whether plaintiff was in fact suffering from police stress because he had never met or examined plaintiff.

The Board then called Dr. Anthony D'Agostino, a psychiatrist in private practice, to testify. Dr. D'Agostino had examined plaintiff on two occasions. Dr. D'Agostino's opinion was that plaintiff suffered from an adjustment disorder, which was related to plaintiff's feelings that he was not getting ahead in his job, that there was no opportunity for personal advancement for him in his job and that his job was not self-fulfilling. Dr. D'Agostino believed that a key factor in plaintiff's stress was that he did not like being a police officer. In addition, Dr. D'Agostino felt that plaintiff was suffering from burn out, which can be experienced in any profession after a number of years.

Dr. D'Agostino believed plaintiff could return to work if he was willing to adjust his expectations of the work. Alternatively, given plaintiff's age (33), Dr. D'Agostino suggested that plaintiff could resign and do something else. Finally, Dr. D'Agostino said that the nature of police work itself had not changed over the years, but that plaintiff had become disillusioned with his work, which led to stress, which in turn magnified the negative aspects of police work and which minimized the positive aspects of work, thus creating even more stress.

In addition to the testimony and the documents plaintiff offered, plaintiff also filed various articles discussing police stress. After considering these materials, the Board concluded that plaintiff had not established that he suffered a job-related disability, and, consequently, he was not entitled to a disability retirement pension. Plaintiff appealed the decision to the circuit court of Cook County, naming as defendants the Police Pension Board and its individual members.

On appeal, the circuit court affirmed the Board's decision. The court, in affirming the Board, stated:

> "The issue of this Court and the Police Board of Review is essentially as follows: when one no longer desires to be a police

officer, is that lack of desire which might manifest itself possibly through stress, a disability that would entitle that police officer to a disability pension? This Court feels the answer has to be no."

The court also observed, however, that the result might have been different had there been evidence that a mental disability had been caused here. But, the court said that based on the facts of this case, it could not find that the Board's order was against the manifest weight of the evidence or contrary to law.

In this appeal, plaintiff contends that the Board's finding should be reversed because it is against the manifest weight of the evidence. Plaintiff argues that the only possible interpretation of the evidence is that plaintiff suffers from police stress syndrome and is therefore entitled to a job-related disability pension. Conversely, defendants argue that the facts support the Board's decision to deny plaintiff's application for a pension. In fact, the defendants assert that there was no evidence presented that showed that plaintiff was suffering from police stress syndrome or that plaintiff's stress was job related. They conclude that although it was clear from the evidence that plaintiff was dissatisfied with his job, this certainly does not establish a claim for disability.

In addition to the briefs filed by the plaintiff and the defendants in this case, the Illinois Police Pension Fund Association (Association) filed an *amicus curiae* brief. The Association urges this court to affirm the Board's decision and argues that recognition of a claim of police stress is against public policy for several reasons, including the fact that there are no clear standards upon which a pension board could base any decision concerning whether an officer suffered from police stress; recognition of police stress would open the floodgates for police stress pension claims; there is a substantial likelihood that fraudulent claims would be filed; and the filing of police stress claims would be viewed by dissatisfied officers as a more favorable alternative to changing careers. The Association also argues that police stress, which is not manifested by any physical symptoms, is, in any event, not a duty-related disability. Hence, the Association asserts that the Board's denial of plaintiff's pension was proper and should be affirmed.

■ When analyzing claims arising from administrative agency determinations, the agency's findings and conclusions on questions of fact are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) On appeal, a reviewing court will only examine the administrative agency's findings of fact to determine if they are

against the manifest weight of the evidence. (*Yochim v. Board of Trustees* (1982), 105 Ill. App. 3d 945, 949, 435 N.E.2d 206, 209.) Only if the findings of the agency are without substantial foundation in the record will the reviewing court overturn the findings. *Yochim*, 105 Ill. App. 3d at 949, 435 N.E.2d at 209.

■ Applying these standards to the present case, we find no basis for plaintiff's claim that the Board's decision is against the manifest weight of the evidence. The statute under which plaintiff seeks his pension provides:

"If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from police service, the police officer shall be entitled to a disability retirement pension." (Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.1.)

Here, the Board held that plaintiff's stress did not result from the performance of an act of duty. We find that plaintiff on appeal has failed to demonstrate that the presumption that agency findings are *prima facie* true and correct should be overturned.

Plaintiff relied on articles discussing police stress, and on Dr. Martin's testimony concerning police stress, to support his claim that his mental problems resulted from the performance of an act of duty. However, plaintiff failed to present any evidence that he was actually suffering from police stress. Furthermore, Dr. Martin never examined plaintiff and thus could not say whether plaintiff was actually suffering police stress. Dr. D'Agostino, on the other hand, who did examine plaintiff, testified that plaintiff was suffering from an adjustment disorder and from burn out. In addition, none of the doctors who wrote letters on plaintiff's behalf would even speculate whether plaintiff's stress was job related.

Also, plaintiff's reliance on *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 485 N.E.2d 871, to support his claim for a pension is misplaced. In that case, the plaintiff was a police officer who applied for a "not on duty" disability pension, claiming that he was mentally disabled and that his use of marijuana and alcohol, along with his difficulty in getting along with his superiors, contributed to his mental disability. (*Hahn*, 138 Ill. App. 3d at 207, 485 N.E.2d at 872.) The "[n]ot on duty" disability pension is granted to a police officer "who becomes disabled as a result of any cause *other than* the performance of an act of duty." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2.) At issue in *Hahn* was whether the

plaintiff could return to work, and not whether he was injured on duty and was therefore entitled to a duty-related disability pension. In that case, the second district merely held that the evidence showed that plaintiff could not return to work, and that, accordingly, the pension fund's denial of plaintiff's application for a non-duty pension was against the manifest weight of the evidence. *Hahn*, 138 Ill. App. 3d at 210, 485 N.E.2d at 874.

In the present case, unlike *Hahn*, plaintiff is, as noted earlier, seeking a duty-related disability pension. Hence, the issue here is whether plaintiff's stress resulted from his job, which was, as stated above, not an issue addressed in *Hahn*. Plaintiff failed to show that his stress resulted from being a police officer, and accordingly, the Board's denial of his pension application here was not against the manifest weight of the evidence.

Finally, we observe that plaintiff's case is strikingly similar to *Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 505 N.E.2d 1387. In *Olson*, the plaintiff, a police officer, sought a duty-related pension. He sought his pension on the basis of three doctors' certificates stating that he suffered from disabling migraine headaches, which were caused by job-related stress. (*Olson*, 153 Ill. App. 3d at 596-97, 505 N.E.2d at 1388.) The pension board denied plaintiff's application for pension and the circuit court affirmed. (*Olson*, 153 Ill. App. 3d at 597, 505 N.E.2d at 1388.) The appellate court there affirmed the denial of plaintiff's pension application. The court in that case found that the factors which plaintiff contended caused his stress, "differences in management style with his superior, the fact that charges were brought against him, and the fact that he was assigned as a patrol officer although he had attained the rank of sergeant," did not demonstrate that the alleged stress resulted from the plaintiff's performance of his duties. (*Olson*, 153 Ill. App. 3d at 599, 505 N.E.2d at 1390.) The appellate court held that these complaints were similar to complaints in any type of employment, and that, thus, plaintiff was not disabled from activities related to his duties as a police officer. *Olson*, 153 Ill. App. 3d at 599, 505 N.E.2d at 1390.

Likewise, here, we do not believe that plaintiff's complaints in the present case are unique to police officers. Plaintiff said that he was no longer having fun, that he could no longer deal with the public's negative response to him and that he was frustrated because he was not advancing in his career. These complaints are common to any type of employment. Plaintiff has failed to show a causal relationship between his particular, unique duties as a police officer and his stress.

Therefore, we hold that the Board's determination that plaintiff did not suffer a job-related disability was not against the manifest weight of the evidence.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING and O'CONNOR, JJ., concur.