BRADLEY BATKA, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE VILLAGE OF ORLAND PARK POLICE PENSION FUND et al., Defendants-Appellees.

First District (6th Division)   No. 1—88—1215

Opinion filed July 21, 1989.

George J. Cullen & Associates, Ltd., of Chicago (Charles G. Haskins, Jr., of counsel), for appellant.

Richard F. McPartlin, of Chicago, for appellees.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Bradley Batka, filed an application for a disability pension with the defendants, the Board of Trustees of the Village of Orland Park Police Pension Fund, and its members, Charles Cassata, George Gilbert, Ronald Noteboom, John Sullivan and Ted Loutis (col-

lectively referred to as the Board), and after a hearing, the Board denied his application. Plaintiff appealed the denial to the circuit court of Cook County. The court affirmed the Board's decision, and the plaintiff now appeals to this court.

The plaintiff, born in 1952, began working for the Orland Park police department in 1974 as a patrol officer. In January 1979, he became a detective in the investigations unit, and, in October 1981, he was returned to patrol duty, and later assigned to a tactical unit. In 1983, because of several incidents involving the plaintiff, the chief of police, Chief Gorris, ordered him to see John Dietche, a counselor, who was affiliated with the department. Dietche referred Batka to a clinical psychologist, Robert Puls. Plaintiff was also referred to two psychiatrists, Dr. Nyquist, on the recommendation of plaintiff's personal physician, and Dr. Zimbroff, on the recommendation of Chief Gorris. In September 1983, plaintiff was relieved of his duties by Chief Gorris. Thereafter, plaintiff filed this application for disability benefits with the Board, and, at the Board's request, plaintiff was then examined by Dr. Lawton and Dr. Doshi, who were also psychiatrists.

When the hearing before the Board began, plaintiff requested that a certain Board member that plaintiff knew recuse himself, Mr. Gilbert, and he further requested that any other Board members who could not be impartial also recuse themselves (apparently plaintiff knew other Board members as well). Plaintiff argued to the Board that Gilbert, in particular, was biased because plaintiff knew Gilbert and, a few months before the hearing, plaintiff and Gilbert spoke to each other at a party and, during their conversation, Gilbert told plaintiff that he hoped they would not become enemies over the matter pending before the Board. The hearing proceeded and none of the Board members recused themselves.

The evidence which plaintiff offered at the hearing established that he had made numerous complaints to his superiors about various problems he had experienced as a police officer and that the stress from these problems prevented him from performing his duties as a policeman. At the hearing, Batka claimed that his stress was disabling, and that he was accordingly entitled to either "line-of-duty" or "not-on-duty" disability benefits. (See Ill. Rev. Stat. 1987, ch. 108½, pars. 3—114.1, 3—114.2.) The problems that plaintiff argued entitled him to either a "line-of-duty" or a "not-on-duty" pension included: his excessive work hours and workload as a detective; his inability to take allotted vacation time; his numerous disagreements with the chief of police, Chief Gorris, as a result of Gorris' criticisms of his work per-

formance and his "bad attitude"; his physical problems including his ulcers, headaches, eye irritation, fatigue, and sinus trouble; his disappointment at failing the sergeant's exam, and his resentment towards less senior officers who had passed the exam; his difficulty with a certain case where a two-year-old child, who reminded him of his daughter, had drowned; his problems with the other officers who teased him and referred to him as "Norman Bates" because he was seeing a counselor; his divorce, which was allegedly the result of his problems with his job; and his violent propensities on the job that resulted in certain incidents where he struck prisoners or suspects, or let them injure themselves without justification.

Plaintiff claimed that these problems caused him severe stress, and resulted in ulcers, headaches, fatigue, depression, sleeping disorders, and irritability. He asserted that these problems prevented him from performing his job as a policeman and, thus, entitled him to a pension.

Other testimony at the hearing included the testimony of plaintiff's supervisor in the investigations unit, and the testimony of several psychiatrists, a psychologist, and a counselor who had examined or counseled plaintiff concerning these difficulties. However, the evidence at the hearing also established that plaintiff's workload was not excessively high when compared to that of the other detectives working for the Village, and that, contrary to plaintiff's allegations, he had, in fact, taken a number of consecutive paid days off. Other evidence at the hearing indicated that plaintiff had handled other homicides and suicides in addition to that of the two-year-old girl and that, apparently, plaintiff's extreme reaction to the child's death was an isolated incident. Finally, the plaintiff admitted, in his own testimony, that he had been a heavy drinker in the past.

All of the doctors and counselors that examined plaintiff agreed that he was suffering from stress, much of which was centered on his problems with Chief Gorris, but they disagreed on whether plaintiff could continue to work as a police officer. The specific recommendations of those persons who had examined plaintiff were varied. Dr. Nyquist, a psychiatrist who saw plaintiff from August 1983 to March 1984, testified and recommended that plaintiff not be employed in police work anywhere because of his personality structure and the stress of the job. Dr. Nyquist stated that he believed that the plaintiff's condition could manifest itself in another job and that plaintiff's divorce and his drinking exacerbated his problems; he felt that if plaintiff continued in police work, it could cause him to "explode" or harm someone.

Dr. Zimbroff, a psychiatrist, also evaluated plaintiff twice in August 1983. He testified that in his opinion, plaintiff needed "fairly intensive psychotherapy" due to his stress, but he felt that plaintiff had sufficient strength to properly function as a policeman. Dr. Zimbroff also noted in his testimony that, from his experience in examining other police officers, he had observed that complaints such as the plaintiff's were similar to those of other officers.

A report by Dr. Lawton, another psychiatrist who saw plaintiff once in May 1985, at the Board's request, was also admitted into evidence. Dr. Lawton's recommendation, in his report, was that plaintiff not return to police duty until his psychological problems were resolved. In addition, a report by Dr. Doshi, a psychiatrist who saw plaintiff twice in January 1985, at the Board's request, was also admitted into evidence. In his report, Dr. Doshi concluded that plaintiff's problems "practically preclude[ ] him from resuming his work as a police officer." Robert Puls, a nonregistered clinical psychologist,[1] also saw plaintiff once in May 1983. He testified that he believed plaintiff could continue his work as a policeman, but that he should also continue in supportive psychotherapy to deal with his stress.

John Dietche, a member of the National Board of Certified Counselors, saw plaintiff numerous times in 1983. He testified that he felt that plaintiff could continue to work as a police officer, but he stated that it was not part of his job to diagnose Batka's condition, but only to counsel him. He did state, however, that he felt plaintiff needed to continue therapy, and agreed with Mr. Puls' recommendations.

After reviewing all of this evidence, the Board denied plaintiff's application for either "line-of-duty" disability benefits, or, alternatively, "not-on-duty" disability benefits. (See Ill. Rev. Stat. 1987, ch. 108½, pars. 3—114.1, 3—114.2.) Plaintiff then, as stated above, sought judicial review in the circuit court. Although the court found that plaintiff had received a fair hearing, the court, nevertheless, remanded the case for further cross-examination of Robert Puls, the clinical psychologist, on hypothetical questions concerning certain of the specific incidents on which Batka had based his claim for disability benefits. On remand, Puls was asked hypothetical questions concerning incidents where plaintiff, while he was on the job, had struck prisoners or suspects or had let them injure themselves. Puls testified that he would not change his opinion that plaintiff could return to police work, based upon the general facts of the hypotheticals. However,

---

[1]At the time of his testimony, Mr. Puls was a candidate for a doctoral degree in psychology.

Puls stated that if he had been provided with additional information about the circumstances surrounding these hypothetical incidents, such as whether or not plaintiff was in therapy at the time of the hypothetical incident, or how plaintiff had been functioning at the time of the hypothetical incident, he would then have to weigh all of the factors again and, depending upon the nature of such additional information, it was possible that his opinion could change.

After this testimony, the Board again denied plaintiff's application, and plaintiff, once again, sought judicial review in the circuit court. This time, the circuit court affirmed the Board's finding. In announcing its decision, the court stated that it agreed with the testimony that found that Batka was unable to return to work and specifically disagreed with Dr. Zimbroff's testimony. The court, however, noted that it was bound by the standard of review which required it to affirm the Board's finding if the Board's decision was not contrary to the manifest weight of the evidence.

On appeal to this court, plaintiff raises two issues: (1) whether the plaintiff received a fair and impartial hearing before the Board; and (2) whether the Board's decision was contrary to the manifest weight of the evidence.

■ Plaintiff first contends that he did not receive a fair hearing before the Board because the Board was biased against him. Our supreme court addressed a similar issue of bias involving a board of education in *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398. The court there said that State administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own merits. Additionally, the court stated that a decision maker is not disqualified simply because he has taken a position on a policy issue related to the dispute, unless it can be shown that the particular decision maker is not capable of judging a controversy solely on the basis of its own circumstances. *Grissom*, 75 Ill. 2d at 320, 388 N.E.2d at 400.

In *Grissom*, the court reviewed a claim by the plaintiff there that the board of education was biased and, because of this, had unfairly overruled most of the plaintiff's objections and sustained all of his opponent's objections. The plaintiff claimed bias because one board member's child had been disciplined by the plaintiff, a teacher, and because the chairman of the board there had told a prospective plaintiff's witness, in front of another board member, that the plaintiff was an unreasonable and incompetent teacher. (*Grissom*, 75 Ill. 2d at 321, 388 N.E.2d at 400.) The *Grissom* court found that these incidents were insufficient to establish bias since, even though the chairman's

remarks were thoughtless and indiscreet, the comments were not so substantial as to constitute bias or prejudice against the plaintiff. (*Grissom*, 75 Ill. 2d at 321, 388 N.E.2d at 400.) The *Grissom* court went on to explain that to establish bias, one must show more than the mere possibility of bias. Moreover, the court noted that the plaintiff there was represented by counsel and that the plaintiff had had the opportunity to cross-examine the witnesses. Hence, under those circumstances, the court concluded, the plaintiff had received a fair hearing. *Grissom*, 75 Ill. 2d at 321-22, 388 N.E.2d at 400.

In this case, the plaintiff contends that he did not receive a fair hearing because the Board, and in particular, Gilbert, was biased. Plaintiff first argues that Gilbert's remarks to him, made at a graduation party, in which Gilbert essentially told plaintiff that he hoped that they would not become bitter enemies because of the Board hearing, showed that Gilbert was biased. Plaintiff also asserts that certain of Gilbert's comments during the hearing showed that he was biased. One of the examples that plaintiff cites took place during plaintiff's testimony at the hearing. Plaintiff, during his testimony, stated that he felt many of the remarks Chief Gorris made to him were offensive and insulting. At that point, Gilbert interrupted plaintiff's testimony and stated that it was well known that Chief Gorris' remarks were often made in a joking manner. Another example cited by plaintiff occurred when plaintiff testified at length about the numerous police department commendations he had received. During that testimony, Gilbert objected to the relevancy of this detailed testimony. These examples, and others, plaintiff claims, demonstrated Gilbert's bias. In addition, plaintiff claims that other Board members' remarks during the hearing showed bias or prejudice. In particular, plaintiff argues that the statement of one Board member, at the end of one of the evening hearing sessions, to the effect that continuing the hearing was "ridiculous," clearly showed that the Board was biased.

The Board, on the other hand, asserts that plaintiff received a fair hearing and that, under the *Grissom* holding, the plaintiff has not established bias here. (See *Grissom*, 75 Ill. 2d 314, 388 N.E.2d 398.) Furthermore, the Board argues that plaintiff's complaints of bias are solely premised on remarks of the Board members that were taken out of context.

■ We agree with the Board. While certain of Gilbert's remarks may have been indiscreet, they do not come close to the level of the remarks in *Grissom*, and, hence, they were not a violation of plaintiff's due process rights. (See *Grissom*, 75 Ill. 2d 314, 388 N.E.2d 398.) Moreover, certain of the remarks were clearly taken out of con-

text. Plaintiff's complaint concerning the statement that to continue the hearing was "ridiculous" was actually a neutral observation as far as the plaintiff was concerned, because the statement was directed towards whether the hearing should be continued when it was already 11 p.m. Additionally, plaintiff did not submit any evidence which would show that either Gilbert or the Board was prejudiced. As noted earlier, merely showing that the possibility of prejudice existed is insufficient to establish bias. Here, similar to the plaintiff in *Grissom*, Batka was represented by counsel, and he had adequate opportunities to cross-examine the witnesses at the hearing. (See *Grissom*, 75 Ill. 2d 314, 388 N.E.2d 398.) Thus, the plaintiff has not established that he was denied a fair hearing before the Board.

Plaintiff next asks us to consider whether the Board's decision was contrary to the manifest weight of the evidence. Initially, we note that the provisions of a police pension plan are to be construed liberally in favor of those to be benefitted. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 211, 485 N.E.2d 871, 876.) However, when analyzing claims arising from an administrative agency's determinations, the agency's findings and conclusions on questions of fact are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) Therefore, on appeal, a reviewing court will only examine the agency's findings of fact to determine if they are contrary to the manifest weight of the evidence. (*Wall v. Police Pension Board* (1988), 178 Ill. App. 3d 438, 533 N.E.2d 458.) To make such a finding, a court must conclude that all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident. *Hahn*, 138 Ill. App. 3d at 209, 485 N.E.2d at 874.

Plaintiff here applied for "line-of-duty" disability benefits (see Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.1), and, alternatively, "not-on-duty" pension benefits (see Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2). Section 3—114.1 of the Illinois Pension Code, which authorizes pension benefits for "line-of-duty" injuries, allows an award of benefits where an officer is disabled as the result of sickness, accident, or injury incurred in or resulting from the performance of an act of duty. Section 3—114.2, the "not-on-duty" provision, allows an award of benefits where an officer is disabled from service on the police force as a result of any cause other than the performance of an act of duty. Both sections are premised upon a finding that the plaintiff's disability rendered him unfit for duty. (See *Wall*, 178 Ill. App. 3d 438, 533 N.E.2d 458; *Hahn*, 138 Ill. App. 3d 206, 485 N.E.2d 871.) On review, there-

fore, we must first determine whether there was some competent evidence in the record to support the Board's finding that plaintiff was not so physically or mentally disabled for service as to entitle him to disability benefits under section 3—114.1 or section 3—114.2 of the Illinois Pension Code. See Ill. Rev. Stat. 1987, ch. 108½, pars. 3—114.1, 3—114.2.

Plaintiff argues that the weight of the evidence overwhelmingly showed that plaintiff was unfit to perform his duties under either the "line-of-duty" or the "not-on-duty" provisions of the Pension Code. (See Ill. Rev. Stat. 1987, ch. 108½, pars. 3—114.1, 3—114.2.) The Board, however, argues that there was clearly sufficient, competent, and proper evidence before it to support the finding that plaintiff could perform his duties as a police officer.

The Board here found that plaintiff was not disabled from service as a police officer and did not, therefore, qualify for either "line-of-duty" or "not-on-duty" benefits. (See Ill. Rev. Stat. 1987, ch. 108½, pars. 3—114.1, 3—114.2.) However, we believe that the evidence before the Board showed that Batka was unable to perform his duties as police officer and, accordingly, the Board's finding that he was not disabled was contrary to the manifest weight of the evidence.

The record on appeal demonstrates that the opinion of three board-certified psychiatrists[2] at the hearing found that Batka was not fit for duty, and one board-certified psychiatrist found that, although Batka was fit for duty, he needed "fairly intensive psychotherapy." In addition, although the two nonphysicians, the psychologist, Robert Puls, and the counselor, John Dietche, believed that Batka was fit for duty, they both agreed that Batka needed to continue in supportive therapy if he was to return to police work. (See *Hahn*, 138 Ill. App. 3d 206, 485 N.E.2d 871.) On the basis of this record, we, thus, conclude that the Board's finding that Batka was fit for duty was contrary to the manifest weight of the evidence and find that the record here established that Batka was disabled from performing his duty.

---

[2]The testimony and opinions of the doctors, the clinical psychologist and the counselor were all properly presented before the Board at plaintiff's hearing. (See Ill. Rev. Stat. 1987, ch. 108½, par. 3—115 (certificate of disability for pension benefits must be sworn to by three practicing physicians but Board may require "other evidence" of disability).) We do, however, believe that the testimony of the physicians should generally be accorded greater weight than the testimony and opinions of the nonphysicians. (See generally Ill. Rev. Stat. 1987, ch. 108½, par. 3—115 (while certificate of disability for pension benefits must be sworn to by "three practicing physicians," the Board may nonetheless require other evidence of disability); see also *Caauwe v. Police Pension Board* (1989), 184 Ill. App. 3d 482.)

■ Even though we find that plaintiff was disabled, we do not find that he was entitled to "line-of-duty" benefits. (See Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.1.) This conclusion is supported by our recent decisions in *Wall v. Police Pension Board* (1988), 178 Ill. App. 3d 438, 533 N.E.2d 458, and *Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 505 N.E.2d 1387. In both *Wall* and *Olson*, the officers there claimed that they were entitled to "line-of-duty" benefits as a result of their stress-related disabilities, which they claimed were particularly a result of the performance of their unique duties as police officers. In these cases, the plaintiffs claimed that the problems with their jobs caused their stress-related disabilities. The problems that were the basis for their claims included differences with superiors in management style; demeaning job assignments relative to rank or seniority; the negative image of the police in the public's eye; the intense pressure caused both from the responsibilities of an officer and the heavy workload of an officer; the tendency toward physical violence on the job; marital difficulties; and alcohol or drug abuse as a result of the job. These problems, the courts there concluded, were not unique to police officers and, consequently, in both cases the courts denied "line-of-duty" disability benefits, finding that no causal relationship existed between the duties of a police officer, and the alleged stress that occurred there. Similarly here, the evidence indicated that no causal relationship existed between Batka's duties as a police officer and his alleged stress. Hence, we find that the Board properly determined that Batka was not entitled to "line-of-duty" benefits under section 3—144.1, and the trial court properly affirmed that determination. See Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.1.

■ Although we find that plaintiff is not entitled to "line-of-duty" benefits, we do find that plaintiff is entitled to "not-on-duty" benefits under section 3—114.2. (See Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2.) Plaintiff here was, in fact, "disabled as a result of [a] cause other than the performance of an act of duty." (See Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2.) Further, since, as noted previously, pension provisions are to be construed in favor of those to be benefitted, we must find that Batka is entitled to "not-on-duty" benefits. In so holding, we also note that section 3—115 of the Illinois Pension Code also requires that an officer's disabled status be annually reviewed to monitor the officer's fitness for duty, and, in the event that the officer refuses to comply with or participate in these annual reviews, the officer's disability pension payments may be terminated. (See Ill. Rev. Stat. 1987, ch. 108½, par. 3—115; *Hahn*, 138 Ill. App.

3d at 213, 485 N.E.2d at 876.) Consequently, while Batka is entitled to receive a "not-on-duty" disability pension, this determination is subject to annual review by the Board to monitor the status of Batka's disabled condition, and, thus, the continuation or termination of disability benefits.

Accordingly, we reverse the decision of the Board and the circuit court and order the Board to award Batka the applicable "not-on-duty" pension benefits.

Judgment reversed.

EGAN, P.J., and LaPORTA, J., concur.