LARRY E. DAILY, Plaintiff-Appellant, v. BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF SPRINGFIELD, ILLINOIS, Defendant-Appellee.

Fourth District No. 4—92—0983

Argued July 21, 1993.—Opinion filed September 30, 1993.

Stanley H. Jakala (argued), of Berwyn, for appellant.

Fredric Benson (argued), of Feldman & Wasser, of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Larry E. Daily appeals from an order of the circuit court which, on administrative review, affirmed the decision of the Board of Trustees of the Police Pension Fund of Springfield, Illinois (Board), to deny him a "not-on-duty" disability pension under section 3—114.2 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.2) and a "line-of-duty" disability pen-

sion pursuant to section 3—114.1 of the Code (Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.1). We affirm.

Plaintiff became a police officer with the City of Springfield (City) on September 7, 1976. On April 9, 1988, he commenced serving a 90-day suspension for insubordination. The suspension ended on July 7, 1988, and plaintiff was to report to duty the next day. He, however, failed to do so. On July 28, 1988, the Department of Public Safety (Department) of the City filed written charges with the Civil Service Commission (Commission), seeking plaintiff's discharge for various rule violations, including insubordination and failure to report to work. On January 6, 1989, the Commission found cause existed for plaintiff's discharge.

Prior to his discharge, plaintiff filed a written application with the Board seeking a duty-related or, in the alternative, a nonduty-related disability pension. Plaintiff claimed he suffered from stress and post-traumatic stress syndrome which disabled him from working at the Department. After conducting hearings pursuant to article 3 of the Code (Ill. Rev. Stat. 1991, ch. 108½, par. 3—101 et seq.), the Board concluded plaintiff was not suffering from post-traumatic stress syndrome on the date of his disability application, but was suffering from stress. It noted, however, the lack of medical evidence discussing and explaining stress in the context of being a sickness and concluded the stress plaintiff was under did not result from an act of duty, but rather from conflicts he had with his supervisors and other city officials. It further determined plaintiff did not suffer from a mental disability which rendered him unable to serve on the police department, but because of his personality may find continued service stressful and choose not to continue. Consequently, the Board denied plaintiff's application for disability benefits.

On administrative review, the circuit court concluded the Board's decision finding plaintiff suffered from a personality disorder and not a mental disability was not against the manifest weight of the evidence. It further concluded under any interpretation of the evidence plaintiff failed to establish suspension or retirement was necessary, or any alleged mental disability resulted from any active duty. After denial of plaintiff's motion to reconsider, this appeal followed.

On appeal, plaintiff first contends the Board's finding he was not entitled to a disability pension is against the manifest weight of the evidence. He argues in viewing the medical and nonmedical evidence presented the only possible interpretation is he suffered from

stress, principally resulting from interpersonal conflicts he had with other officers, which aggravated his preexisting personality disorder, thereby disabling him from performing his duties. Since he is only required to prove he was disabled while performing an act of duty—rather than that the disability arose from the performance of an act involving a "special risk" (see Ill. Rev. Stat. 1991, ch. 108½, par. 5—113)—he maintains his long-standing controversy with the Department entitles him to a duty-related or a nonduty-related disability pension. Alternatively, he argues under *Caauwe v. Police Pension Board* (1989), 184 Ill. App. 3d 482, 540 N.E.2d 453, section 3—115 of the Code mandates a disability pension cannot be denied unless three physicians have certified the applicant is not disabled (Ill. Rev. Stat. 1991, ch. 108½, par. 3—115). Due to the absence of such certifications, he contends the case should be remanded to the Board for additional hearings to secure them.

On administrative review, the findings and conclusions of an agency on questions of fact are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110; *Worth v. Board of Trustees of the Police Pension Fund* (1992), 230 Ill. App. 3d 349, 353, 595 N.E.2d 51, 53.) An administrative agency's decision will only be disturbed on review if it is against the manifest weight of the evidence. (*Stec v. Oak Park Police Pension Board* (1990), 204 Ill. App. 3d 556, 561, 561 N.E.2d 1234, 1237; *Ernzen v. Board of Trustees of the Batavia Firemen's Pension Fund* (1981), 96 Ill. App. 3d 1143, 1147, 421 N.E.2d 1065, 1068.) To make such a finding, the court must conclude that " 'all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous,' [citation] and that the opposite conclusion is clearly evident." *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 209, 485 N.E.2d 871, 874, quoting *O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653, 456 N.E.2d 998, 1002.

■ Plaintiff sought a line-of-duty disability pension pursuant to section 3—114.1 of article 3 of the Code, which provides:

> "If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension of 65% of the salary attached to the rank on the police

force held by the officer at the date of suspension of duty or retirement." (Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.1.) In contrast to article 5 of the Code (Ill. Rev. Stat. 1991, ch. 108½, pars. 5—101 through 5—236), which governs the police pension fund for cities of more than 500,000 in population, article 3 does not contain a definition of "act of duty." (See Ill. Rev. Stat. 1991, ch. 108½, par. 5—113 (defining "act of duty").) It does, however, state "[a] police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.1.

Plaintiff also applied for not-on-duty pension benefits under section 3—114.2 of the Code, which states:

> "A police officer who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department, shall be entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement." Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.2.

■ These sections are premised upon a finding that plaintiff's disability rendered him unfit for duty. (*Batka v. Board of Trustees of the Village of Orland Park Police Pension Fund* (1989), 186 Ill. App. 3d 715, 722, 542 N.E.2d 835, 840.) To receive a disability pension under either section, plaintiff must, therefore, prove (1) the existence of a physical or mental disability, (2) which renders his suspension or retirement necessary. In order to qualify for a duty-related pension, an applicant is also required to prove he was disabled as a result of an injury incurred in or resulting from the performance of an act of duty. (Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.1.) Based on the evidence presented, plaintiff failed to establish all of the necessary requirements to be awarded a disability pension, and therefore the denial of benefits was not against the manifest weight of the evidence.

■ As the medical evidence demonstrated, plaintiff was examined by several doctors, and their reports were included in the record on appeal. Based on the reports submitted which were contemporaneous with plaintiff's disability application, it is clear plaintiff was found to have a personality disorder, but this disorder did not disable him from performing the duties of a police officer. Specifically, Dr. Robert S. Hamilton, a psychiatrist who examined plaintiff

and was the only physician to testify, stated his psychiatric evaluation revealed plaintiff had a mixed personality disorder with obsessive compulsive and paranoid traits and some narcissism. He asserted personality disorders were viewed as mental disorders and not as an illness. While it was a difficult question to answer whether plaintiff could work at his job, he finally asserted plaintiff could perform the duties of a police officer, but probably would feel it was not right for him to do.

Moreover, the nonmedical evidence indicated plaintiff could perform the duties of a police officer, but could not work with the present administration. This is specifically reinforced by plaintiff's own testimony in which he stated he made the decision in April 1988 to stay with the Department in hopes an election would result in changes in the administration at the Department. He ultimately decided to leave because of the conflicts.

While the record indicates plaintiff's tenure on the police department was difficult and he did experience stress, based on the evidence presented, there is sufficient evidence to support the Board's finding plaintiff did not have a mental disability on the date of his disability application which rendered him unable to serve on the police department. Although plaintiff suffered from stress and had a personality disorder, these conditions did not deprive him of his ability to serve on the police department, but because of his personality he might find continued service stressful. Simply because he chooses not to continue work at the Department because it is stressful does not result in a conclusion he is mentally disabled so as to render him unfit for duty. On the basis of the record, the Board's determination plaintiff was not disabled from performing his duty and was therefore not entitled to a disability pension under section 3—114.1 or 3—114.2 of the Code was not against the manifest weight of the evidence.

While other cases have determined an officer was entitled to "not-on-duty" benefits under section 3—114.2 due to stress-related conditions caused by employment, they do not support a similar conclusion in the present case. In these cases, medical testimony was introduced which indicated the stress-related conditions caused the applicant to be unfit for duty. (See *Batka*, 186 Ill. App. 3d at 723, 542 N.E.2d at 840 (where all the doctors who examined Batka agreed he was suffering from stress, much of which centered on a problem with the chief, but disagreed on whether plaintiff could continue to work as a police officer; three of the doctors, however, certified Batka was not fit for duty); *Hahn*, 138 Ill. App. 3d at 210-

11, 485 N.E.2d at 874-75 (three of four psychiatrists who examined applicant concluded he was unfit for duty); *Stec*, 204 Ill. App. 3d at 565-66, 561 N.E.2d at 1240 (uncontroverted medical evidence indicated plaintiff was unfit for duty).) In the present case, no such determination was made by any physician.

Even if it were assumed plaintiff had a mental disability which rendered his suspension or retirement from the force necessary, the evidence still would not support a finding plaintiff suffered a disability as a result of the performance of an act of duty which would allow him to obtain a disability pension under section 3—114.1 of the Code. Plaintiff argues under section 3—114.1 of the Code he need only show his disability occurred while performing an act of duty and not an act of duty "inherently involving special risk" as in section 5—113 of article 5 (Ill. Rev. Stat. 1991, ch. 108½, par. 5—113; see also *Worth*, 230 Ill. App. 3d at 356, 595 N.E.2d at 55), and cases relying on such an interpretation of "act of duty" in article 3 were incorrectly decided. Conversely, defendant asserts the article 5 "special risk" component of an act of duty does apply to cases under article 3 (see *Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 599-600, 505 N.E.2d 1387, 1390). We need not address this specific issue, however, because there is no showing plaintiff's stress arose from the performance of *any* act of duty.

The evidence demonstrated the stress plaintiff experienced leading to his disability application resulted not from the duties of a police officer but from the conflicts he had with his superiors and peers. The plain meaning of the phrase "incurred in or resulting from the performance of an act of duty" is that the injury must be incurred in or result from an act of duty. Therefore, plaintiff needed to show causation, *i.e.*, the disabling condition was caused or aggravated during the performance of a job-related task. (*English v. Village of Northfield* (1988), 172 Ill. App. 3d 344, 347, 526 N.E.2d 588, 590-91.) In this case, plaintiff has failed to show there was a causal relationship between the stress and the duties of a police officer.

Plaintiff also relies on *Swanson v. Village of Lake in the Hills* (1992), 233 Ill. App. 3d 58, 598 N.E.2d 430, to support his argument he is entitled to a disability pension. This case involved the receipt of a disability pension pursuant to the Public Employee Disability Act (Ill. Rev. Stat. 1987, ch. 70, par. 91). The present case, unlike *Swanson*, deals with an interpretation and application of section 3—114.1 of the Code, which as *Swanson* recognized is more re-

strictive than the Public Employee Disability Act. Therefore, the fact the court in *Swanson* found stress-related conditions caused by the job entitled an applicant to pension benefits does not result in a contrary finding in this case.

■ Finally, we address plaintiff's argument the case should be remanded to obtain proper certification. Section 3—115 provides:

> "[a] disability pension shall not be paid unless there is filed with the board certificates of the police officer's disability, subscribed and sworn to by the police officer if not under a legal disability, or by a representative if the officer is under legal disability, and by the police surgeon (if there be one) and 3 practicing physicians selected by the board. The board may require other evidence of disability." (Ill. Rev. Stat. 1991, ch. 108½, par. 3—115.)

In the present case, the three physicians selected by the Board to examine plaintiff did not certify plaintiff had a disability. Based on this statute, without such certification, the Board could not give plaintiff a disability pension. However, plaintiff cites *Caauwe* for the proposition the Board could not *deny* a pension without certification from three doctors certifying plaintiff did not have a disability.

In *Caauwe*, the Board denied benefits; all the medical evidence had been presented in the form of uncertified, unsworn, unverified written medical reports of the respective doctors. On appeal, petitioner argued because the doctors failed to *certify* his disability, or lack thereof, in their medical reports, there was insufficient evidence for the Board on which to predicate any finding of disability or lack thereof. Petitioner also asserted certification by the doctors he was not disabled was mandatory under section 3—115, and because the doctors' reports lacked the certification of petitioner's disability, the cause should be remanded for such certification. The first district agreed, holding the language of section 3—115 was clear and mandated the Board to select three practicing physicians and required them to furnish the Board with subscribed and sworn-to certifications of the applicant's disability. Since the Board did not require the three physicians it selected to furnish certification of the applicant's disability, and the three physicians did not submit such certification, the circuit court's order affirming the Board's denial of pension benefits was reversed and remanded to the Board to receive certification of the three doctors of petitioner's disability or lack thereof. *Caauwe*, 184 Ill. App. 3d at 484-86, 540 N.E.2d at 455-56.

Under the clear language of section 3—115 of the Code, *certification* of an officer's disability is only required where the Board will be providing benefits to plaintiff, not when it is going to deny benefits. To the extent *Caauwe* mandates certification of an applicant's disability prior to denying benefits, we find it is in express contradiction of the language of the statute and decline to follow it.

For the reasons stated, the circuit court's order is affirmed.

Affirmed.

COOK and GREEN, JJ., concur.