JOHN F. THAXTON, Plaintiff-Appellee and Cross-Appellant, *v.* ELMER W. WALTON, Mayor, City of Decatur, *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District   No. 4—83—0310

Opinion filed December 29, 1983.—Modified on denial of rehearing April 9, 1984.

John W. Couter, Assistant Corporation Counsel, of Decatur, for appellants.

Cornfield & Feldman, of Chicago (Jacob Pomeranz, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

On May 20, 1982, plaintiff, John F. Thaxton, filed a petition in *mandamus* in the circuit court of Macon County seeking, among other relief, (1) an order that he be reinstated to a position of employment with defendant, city of Decatur (City), from which he had been discharged, (2) back pay from the time of his discharge, and (3) attorney fees involved in bringing the action. In addition to the City, various of its officers and its civil service commission were joined as defendants. On September 3, 1982, the court ordered that plaintiff be reinstated. On February 8, 1983, the court determined that plaintiff was entitled to back pay from the date of his discharge, but that he was not entitled to attorney fees. By written order of April 8, 1983, the net amount of back pay was fixed in the sum of $12,195.86. Defendants have appealed the award of back pay. Plaintiff has cross-appealed the trial court's denial of his request for attorney fees.

Prior to the initiation of the instant proceedings the defendant civil service commission had entered an order upholding plaintiff's discharge by the defendant City. In administrative review, the circuit court of Macon County entered an order on February 16, 1982, reversing the order of the civil service commission. No appeal was taken from that order.

■ The City does not dispute that *mandamus* properly issued to compel it to reinstate plaintiff. It also agrees that generally, as a matter of common law, a wrongfully discharged governmental worker is entitled to back pay that he would have earned if not wrongfully discharged. The City maintains that an exception to that rule is applicable here because, during a portion of the time plaintiff was not working, the City was required to pay the salary of a substitute hired to replace plaintiff. The City admits that it would be entitled to no setoff for sums paid to the substitute employee after the trial court granted the *mandamus* relief on September 3, 1983, but maintains that it is entitled to setoff for sums paid the substitute for work prior to that date.

In the past, the general common law rule in regard to recovery for lost earnings by a person in the position of plaintiff has been stated to be:

"Where an officer was wrongfully removed, the rule is that he may on reinstatement recover from the municipality the salary that accrued during the period of removal, unless he has acquiesced in the removal, or unless it appears that such salary was paid to a de facto officer holding the office and performing the duties, but the latter exception is not applicable where no one is especially appointed in place of a de jure officer, or where the salary was not in good faith paid to the de facto officer." 62 C.J.S. *Municipal Corporations* sec. 528, at 978 (1949).

The earliest case in point is *People ex rel. Sartison v. Schmidt* (1917), 281 Ill. 211, 117 N.E. 1037. There, a petition in *mandamus* was brought requesting that the reinstatement of a discharged State employee be ordered. In a previous case, his discharge had been held to be improper. In the *mandamus* proceeding, the employee sought reimbursement for the earnings he would have made had he not been discharged. The supreme court affirmed the circuit court's denial of reimbursement on the basis that, during the course of the discharge, the State had hired and paid another to perform the work the discharged employee would have done.

In *McKinley v. City of Chicago* (1938), 369 Ill. 268, 16 N.E.2d 727, the supreme court applied the *Schmidt* rule in a case where a

candidate for municipal judge had prevailed in an election contest and had sought the pay he would have earned had he been permitted to take office when the term started. The court held the judge to be barred from the salary because it had been paid to the declared winner. Then, in *Corbett v. City of Chicago* (1945), 391 Ill. 96, 62 N.E.2d 693, persons who had been refused civil service certification as telephone operators obtained a writ of *mandamus* compelling their certification. No certification was made until the City had exhausted its appeal rights. Upon being certified and hired, the operators brought suit for the earnings they would have made had they been certified and hired when the writ of *mandamus* issued. The payment of wages to others who temporarily filled the positions sought by relators was held to be no bar to relators' claims. The court reasoned that once the relators' right to the positions had been judicially determined, upon the issuance of the writ of *mandamus*, the question of the right to the positions was no longer sufficiently in doubt to justify withholding of pay to relators even though payments were being made to others who filled the positions.

The supreme court has not ruled directly on the foregoing question since *Corbett*. In *People ex rel. Trapp v. Tanner* (1956), 10 Ill. App. 2d 155, 133 N.E.2d 526, the appellate court followed the previously stated general rule as modified by *Corbett*. In *McReynolds v. Civil Service Com.* (1974), 18 Ill. App. 3d 1062, 311 N.E.2d 308, the appellate court cited the modified setoff rule of *Corbett* as a reason why a statutory requirement that the Civil Service Commission of the State of Illinois grant a hearing to a discharged employee within 30 days of request (Ill. Rev. Stat. 1971, ch. 127, par. 63b111) be held to be mandatory. The court recognized the potential loss of earnings to a discharged employee whose discharge might later be determined to be improper.

The *Corbett* court distinguished the situation in that case from those in *McKinley* and *Schmidt* on the basis that in *Corbett*, the claimants' rights to the positions had been judicially determined but indicated adherence to the holdings of those cases. Plaintiff argues that *Corbett's* adherence to the rule of those cases should be limited to the situation where the person seeking lost earnings was an applicant for a position and not a discharged employee. We see no language in *Corbett* to so modify the rule.

■ Even under the *Corbett* holding, the City should be entitled to a deduction only for monies paid to plaintiff's successor prior to February 16, 1982, when the circuit court reversed the order of the Commission allowing for the discharge rather than for the period prior to

September 3, 1982, when the court in this case mandated that plaintiff be restored to the position in question. The unappealed judicial order of February 16, 1982, finally determined whether plaintiff could properly be discharged. The court was sitting in administrative review in that case and had no power of *mandamus*, but the uncertainty as to plaintiff's right to the job was resolved by that decision. The September 3, 1982, order in this case merely enforced the determination made in the previous proceeding.

Plaintiff maintains that constitutional principles evolving after the *Corbett* decision have required the abolishment of the common law rule of setoff for monies paid to the employee holding the job to which the claimant was entitled. The cases began with *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633. There, the United States Supreme Court upheld a summary discharge of a Federal employee pursuant to the provisions of the Lloyd-LaFollette Act (5 U.S.C. sec. 7501 (1970)). The plurality opinion, expressing the views of three justices, held that the employee's expectation of permanency in his job was no greater than that afforded by the procedures by which he could be removed, and thus he had no property right in the job requiring, under due process, more favorable procedures than those set out in the Act. The concurrence, expressing the views of two justices and one of the dissents, expressing the views of three justices, held that the employee had a property interest in the expected continuance of his government job. The concurrence held that one of the factors justifying the summary procedures used was that after discharge, the employee would have a right to a plenary hearing with an award of back pay if his discharge was found to be improper.

Similarly, Illinois courts have held or indicated that when a governmental employee is summarily suspended or discharged, due process requires that if after a full hearing the governmental action was determined to be improper, the employee be reimbursed for the pay he would have received. (*Starkey v. Civil Service Com.* (1983), 97 Ill. 2d 91; *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793; *Haverly v. Boys* (1979), 77 Ill. App. 3d 312, 395 N.E.2d 1005; *Bromberg v. Whitler* (1977), 57 Ill. App. 3d 152, 372 N.E.2d 837; *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346, 308 N.E.2d 1.) Here, most of the deductions claimed by the City from any award of back pay concern a period of time after plaintiff had been given a full hearing as to his discharge. However, a decision of plaintiff's first full hearing after his discharge was not made until October 13, 1981. Thus, deduction for the period from September 8, 1981, would have run afoul of the rule in the foregoing cases.

In *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473, the court held that under a collective bargaining agreement, teachers that were not given an opportunity, due them under the agreement, to perform certain work during the summer were entitled to the earnings they would have made. No question of setoff for salaries or wages paid to others was raised.

We are not satisfied that the cases cited by plaintiff change the precedent of *Corbett*. Accordingly, we deem that precedent to be binding on us and follow it. We hold that the City is entitled to deduct from the sums that would have been paid to plaintiff the amount that was earned after October 13, 1981, and prior to February 16, 1982, by the person hired to replace plaintiff.

■ Finally, we consider plaintiff's contention that he was entitled to an award of attorney fees for bringing the *mandamus* proceeding below. Plaintiff has no common law right to such fees. (*Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 387 N.E.2d 1118.) Any such right would have to arise from statute. We deem a request for reimbursement to be one for damages arising from an improper discharge rather than for "wages earned and due" within the statutory provisions for recovery of attorney fees in such cases. (Ill. Rev. Stat. 1981, ch. 13, par. 13; *World's Columbian Exposition v. Thompson* (1894), 57 Ill. App. 606.) The reimbursement was not for work actually performed as in *Reiss v. El Bauer Chevrolet Co.* (1968), 96 Ill. App. 2d 266, 238 N.E.2d 619. The reimbursement was not claimed for a violation of a constitutional right. The complaint made no reference to the applicable provisions of the Federal Civil Rights Act (42 U.S.C. secs. 1983, 1988 (1981)). The monies awarded here were awarded as a matter of common law right.

For the reasons stated, the judgment in favor of plaintiff is reversed and the case remanded to the circuit court of Macon County with directions to reduce plaintiff's recovery by the amount paid after October 13, 1981, and prior to February 16, 1982. The denial of plaintiff's request for attorney fees is affirmed.

Reversed in part, affirmed in part, remanded.

MILLS, P.J., and TRAPP, J., concur.