SCHEDULING CORPORATION OF AMERICA, Plaintiff and Counter-defendant-Appellant, v. MICHAEL F. MASSELLO, Defendant and Counter-plaintiff-Appellee.

First District (2nd Division)   No. 85—3662

Opinion filed January 13, 1987.—Rehearing denied February 10, 1987.

William J. Harte, Ltd., of Chicago (William J. Harte and Sylvia A. Sotiras, of counsel), for appellant.

Erbacci, Syracuse & Cerone, Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Counterdefendant, Scheduling Corporation of America (SCA), appeals from the circuit court's ruling in favor of counterplaintiff, Michael F. Massello (Massello), for $187,627 in damages for sales commissions past due. This case is before this court for the second time; previously we addressed various issues relating to the liabilities of both parties arising out of their contracts with each other. We determined that Massello had not breached his employment agreements and that SCA was liable for commissions on sales which occurred before and after Massello resigned, provided that Massello established that he was the procuring cause of such sales. However, we determined that the trial court's finding in favor of Massello lacked evidentiary support. Therefore, we reversed and remanded for further fact finding by the trial court to determine if Massello was, in fact, the procuring cause of the sales for which he claims commissions. Because of the many facts detailed in our previous opinion, we only summarize them briefly.

Counterdefendant SCA provides management efficiency services which include scheduling systems to improve a business' efficiency and to allow monitoring by management. Counterplaintiff Massello began working for SCA in 1974. Massello moved into sales in 1976 and soon took over the primary sales responsibilities for the company. The terms of the contract for which this action is based on were summarized in *Massello I*:

"Upon moving into sales in 1977, Massello and SCA entered into a 'Compensation Agreement for 1977' which provided for a base salary of $26,000 a year plus two commission plans, one for 5% and other for 2½%. Massello was to receive 5% on what may generally be referred to as 'cold sales,' *i.e.*, sales without introduction from another source *and all referrals from 5% clients which resulted in a sale.* He was to receive 2½% *on all other sales which included extensions of work*

*within the same project and sales resulting from referrals from 2½% clients.* Both the 2½% and 5% commissions were to be paid when SCA received payment for the client." (Emphasis added.) *Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 357-58, 456 N.E.2d 298.

On March 23, 1979, Massello received his paycheck for the preceding four-week period. The check did not include the 2½% commissions for that period, which came to approximately $9,000. Massello continued to perform his duties until April 5, 1979, when he tendered his resignation. Thereafter, Massello formed his own scheduling company, National Business Consultants (NBC). He hired several SCA employees and solicited business from several of SCA's prospective, present, and former clients. SCA filed suit to enjoin Massello and NBC from soliciting their present and former clients. Massello counterclaimed for compensation allegedly due him. Following a bench trial, the trial court ruled against SCA and in favor of Massello, who was awarded the $165,619.50 he sought on his counterclaim. SCA appealed. This court held that Massello had not breached his contract and that NBC did not interfere with any of SCA's contractual relations. (119 Ill. App. 3d 355, 456 N.E.2d 298.) However, we reversed that trial court's finding that Massello had presented sufficient evidence to support his claim that he was the procuring cause of the sales for which he claimed commissions. Therefore, we remanded this case to the circuit court for a determination of which sales, if any, Massello was the procuring cause. On remand, the trial court judge heard additional testimony, and supplementary exhibits were presented by Massello. At the conclusion of the trial, both parties submitted proposed written findings of fact and conclusions of law. Subsequently, the trial court judge heard oral arguments with respect to the parties' proposals.

After reviewing the record and the evidence presented, the trial court judge adopted Massello's proposed findings of fact. While the court awarded Massello $187,627 in damages, it denied Massello's request for prejudgment interest. SCA now appeals the trial court's order.

The counterdefendant, SCA, argues that the trial court's holding was against the manifest weight of the evidence in that counterplaintiff Massello failed to provide sufficient evidence that he was the procuring cause of the sales for which he claims commissions. This court stated in *Massello I* that Massello was "clearly entitled to commissions on sales which occurred prior to resignation, and, as to post-resignation sales, a commission is in order if it is established that Mas-

sello was the procuring cause of the sale." (*Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 364-65, 456 N.E.2d 298.) Therefore, this court determined that on remand Massello must "come forward with evidence, as to each item of claimed commission, that the sales were made prior to his resignation or that his involvement with post-resignation sales was such as to entitle him to commissions." (119 Ill. App. 3d 355, 366, 456 N.E.2d 298.) We find that Massello has met this burden.

■■ Under the procuring-cause rule, a party may be entitled to commissions on sales made after the termination of a contract if that party procured the sales through its activities prior to termination. The rule applies, however, only if the contract does not expressly provide when commissions will be paid. (*Technical Representatives, Inc. v. Richardson Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 833, 438 N.E.2d 599.) This rule protects a salesman who is discharged prior to culmination of a sale but who has done everything necessary to effect the sale. (*Heuvelman v. Triplett Electrical Instrument Co.* (1959), 23 Ill. App. 2d 231, 237, 161 N.E.2d 875.) The salesman or agent who is the procuring cause is entitled to the commission notwithstanding the fact that the sale was consummated by the principal personally or through another agent. 23 Ill. App. 2d 231, 237, 161 N.E.2d 875.

Massello's claimed commissions are embodied in counterplaintiff's exhibit No. 1, which reflects a total claim of $187,627 as follows:

*Arkansas Blue Cross/Blue Shield* - $6,876 in commissions for sales in gross revenues received by SCA from 8/81 to 1/82 representing a 5% commission.

*Kansas City Blue Cross/Blue Shield* - $17,830 for sales on gross revenues received by SCA from 6/79, representing a 5% commission.

*Philadelphia Blue Cross* - $13,255 in commissions for sales on gross revenues received by SCA from 4/79 to 9/79, representing a 5% commission.

*St. Louis Blue Cross/Blue Shield* - $40,845.40 in commissions for sales on gross revenues received by SCA between the period 6/80 through 3/84 representing a 5% commission. At trial Massello modified his claim for commissions for St. Louis from 5% to 2.5%. This adjustment is reflected in the trial court's judgment.

*Washington D.C. Blue Cross/Blue Shield* - $80,947.90 in commissions for sales on gross revenues received by SCA between the period 5/80 through 10/83 representing a 5% commission.

*Wyoming Blue Cross/Blue Shield* - $8,005 in commissions for

sales on gross revenues received by SCA from 6/80 to 12/80 representing a 5% commission.

*Kroehler Manufacturing* - $3,340 in commissions for sales on gross revenues received by SCA in 4/79, representing a 5% commission.

*Ryder Truck Rental, Inc.* - $10,995 in commissions for sales on gross revenues received by SCA in 4/79, representing a 2.5% commission.

*Encyclopedia Britannica* - $16,156 in commissions for sales on gross revenues received by SCA in 5/79 representing a 2.5% commission.

*American Banker's Life Assurance Company* - $1,035 in commissions for sales on gross revenues received by SCA in 2/80, representing a 2.5% commission.

SCA alleges that Massello failed to present sufficient facts and evidence to support Massello's claim that he was the procuring cause of these sales. SCA alleges that "Massello did not in any of the ten cases at issue offer any definite dates, times or the names of individuals he spoke with or specifically what, if any, efforts were made by him to procure the sale." While it is true that Massello, in his testimony, was not able to recall the exact dates and times in which he made contacts with the customers, it is clear from his testimony and SCA's actions that he in fact procured the sales at issue.

It is undisputed that eight (Arkansas Blue Cross/Blue Shield, Kansas City Blue Cross/Blue Shield, Philadelphia Blue Cross/Blue Shield, St. Louis Blue Cross/Blue Shield, Kroehler Manufacturing, Ryder Truck Rental, Encyclopedia Britannica, and American Banker's Life Assurance Company) of the clients were originally "sold" by Massello. This is evident from Massello's testimony. Massello testified in each case that his contacts with these customers led to SCA sales. Moreover, SCA paid Massello commissions for each of these sales prior to his resignation. These facts are undisputed. Additionally, testimony at trial established that the two remaining clients (Washington D.C. Blue Cross and Wyoming Blue Cross) were specifically referred to SCA by Arkansas Blue Cross, an admitted 5% client of Massello's. In short, there was testimony at the trial which established that Massello "sold" each of the clients, prior to his resignation, or that the clients were referred to SCA by one of Massello's clients.

SCA contends, however, that in order to receive any sales commissions (on original sales or extensions), the salesman must be constantly involved with the client and must constantly monitor the services provided to each client. SCA claims that each project is a

separate sale to the client company and that the salesman's constant involvement is required to gain subsequent sales or extensions. Therefore, SCA claims that Massello is not entitled to any post-resignation sales because, after his resignation, he failed to service his clients.

■■ ■ There is no credible evidence, however, which established that Massello was required to keep in "constant contact" with his clients in order to secure commissions on original sales or extensions. While evidence was conflicting as to the duties of a salesman, it is the trial court's function to determine the credibility of the witnesses, and this court cannot substitute its opinion for the finding of the trier of fact unless the holding is against the manifest weight of the evidence. *i.e.*, an opposite conclusion must be clearly evident. (*Stein v. Malden Mills, Inc.* (1972), 9 Ill. App. 3d 266, 270, 292 N.E.2d 52.) The trial court specifically stated that it was adopting Massello's findings of fact and conclusions of law. Furthermore, the trial court specifically found that George Stout, president of SCA, and John Moss, sales director of SCA, were not credible witnesses and that the court did not believe their testimony. Thus, their testimony regarding Massello's duty to service his clients cannot be given any weight. Therefore, we hold that the trial court's findings of fact are not against the manifest weight of the evidence.

■■ Counterdefendant SCA next alleges that Massello is not entitled to post-resignation commissions under his two employment agreements. It appears that SCA wishes to relitigate issues which this court decided in *Massello I*. In our previous opinion, we stated that Massello was entitled to post-resignation sales if he showed that he was the procuring cause of these sales. (*Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 365, 456 N.E.2d 298.) By employing the procuring-cause rule, we were attempting to remedy the harsh nature of "at will" contracts. (*Fortune v. National Cash Register Co.* (Mass. 1977), 364 N.E.2d 1251, 1257.) However, the underlying contract may be used as a basis for determining if a salesman is the procuring cause of the sales at issue. (See *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.* (7th Cir. 1985), 762 F.2d 557, 560 (court allowed post-termination commissions based on contract for salesman who sold advertising space in defendant magazines where contract was "at will" and the contract limited commissions to a 12-month period from the date of termination); *Richer v. Khoury Brothers, Inc.* (7th Cir. 1965), 341 F.2d 34, 38 (court allowed salesman to recover commissions because he was the procuring cause based on the contract between the parties).) It is evident that Massello was under no contractual obligation to service clients in order to receive commis-

sions for extensions of original projects. The compensation agreement and the practice of the parties established that Massello was to receive commissions upon extensions of original projects which he sold or upon referrals from clients to whom he had sold. Nowhere in the compensation agreement is there any provision requiring Massello to service his clients in order to receive commissions.

■ SCA complains, however, that it is unfair for Massello to receive commissions for extensions of his projects because he could theoretically receive commissions until the year 2000. This court need not go that far, however. Massello limited his request for commissions to those occurring until the beginning of the remand trial in 1984. In short, the answer to SCA's argument is that any unfairness is the result of its freely negotiated bargain with Massello. (*Publishers Resource, Inc. v. Walker-Davis Publications, Inc.* (7th Cir. 1985), 762 F.2d 557, 560; see *Richer v. Khoury Brothers, Inc.* (7th Cir. 1965), 341 F.2d 34,38; see *Stein v. Malden Mills, Inc.* (1972), 9 Ill. App. 3d 266, 270, 292 N.E.2d 57.) As such, the terms of the contract control, and it is not our function to rewrite them according to our own notions of fairness. (*Publishers Resource, Inc. v. Walker-Davis Publications* (7th Cir. 1985), 762 F.2d 557, 560.) Therefore, we rule that Massello was the procuring cause, under the agreement of the parties, as supported by the substantial evidentiary finding of the court, and that he is entitled to commissions notwithstanding the fact that further sales or extensions were made or consummated subsequent to his resignation.

Counterdefendant SCA lastly contends that Massello is estopped from claiming commissions due to his breach of an implied duty of good faith under the employment agreement. The gist of this argument is that because Massello and his company NBC solicited the same clients he seeks commissions from now, he is barred from recovering any commission from SCA. SCA is trying to litigate issues which this court has already decided. In *Massello I,* we determined that Massello did not breach his contact by soliciting SCA clients and that Massello did not interfere with SCA's contractual relationships. Therefore, we affirm the trial court's judgment.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.