GARY R. SCHACKLETON, Plaintiff-Appellee and Cross-Appellant, v. FEDERAL SIGNAL CORPORATION, Defendant-Appellant and Cross-Appellee.

First District (1st Division)   No. 1—88—2547

Opinion filed December 11, 1989.—Rehearing denied May 16, 1990.

Kovar, Nelson, Brittain & Sledz, of Chicago (Terrill Elise Pierce, of counsel), for appellant.

Canna & Canna, of Homewood (John F. Canna and Thomas J. Canna, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Gary R. Schackleton (plaintiff), employed as a commission salesman by Federal Signal Corporation (defendant), a nationwide company engaged in the manufacture, installation and maintenance of illuminated identification signs, brought this action in the circuit court of Cook County to recover unpaid sales commissions earned prior to his termination from his employment with defendant. Following a bench trial, the trial court entered judgment in favor of plaintiff in the amount of $18,160.94, plus interest and costs, but denied plaintiff's request for attorney fees. The following issues are presented on defendant's appeal: (1) whether plaintiff's at-will employment status bars his breach of contract claim for unpaid commissions; and (2)

whether the trial court's judgment was against the manifest weight of the evidence. On cross-appeal, plaintiff raises the issue of whether the circuit court erred in denying his request for attorney fees. For the reasons that follow, we affirm in part, reverse in part and remand.

Plaintiff commenced employment with defendant in December 1974, as an inside sales coordinator. Between May 1977 and the date of his termination on August 5, 1983, plaintiff was employed as a commission salesman in defendant's Chicago district. His duties included the sale and leasing of signs to businesses in his territory, the sale of maintenance contracts for signs, and assisting in the design and installation of signs.

On August 5, 1983, John Walsh, vice-president and regional manager of the Great Lakes region of defendant, terminated plaintiff's employment. Walsh testified at trial that he intended to meet with all the sales people in the Chicago district to obtain their input as to whether the upcoming sales projections for 1984 were realistic goals. During his interview with plaintiff, Walsh informed plaintiff of his proposed sales quota for 1984 and they discussed how he planned to achieve this goal. Plaintiff stated that the proposed quota was unrealistic, providing numerous reasons as bases for his assertion. When asked for solutions, plaintiff did not offer any suggestions for improvement. Walsh became frustrated and reached an "emotional point" during the conversation, at which time he terminated plaintiff's employment. Walsh testified that plaintiff was terminated solely on what transpired during the meeting and that plaintiff's most recent 1983 performance evaluation had not been considered.

Michael Costello, defendant's district manager and plaintiff's immediate supervisor, testified at trial that he was neither consulted nor permitted to offer any input into the termination decision. He stated that plaintiff had never been cited for disciplinary action and the official reason given for plaintiff's termination was "inadequate performance." Plaintiff testified at trial that he never received a copy of his 1983 performance evaluation, while defendant testified that efforts were made to locate the document, but it was never found.

At the time of plaintiff's termination, he had acquired the third highest sales production of the eight salesmen in the Chicago district. Only two salesmen, both employed for a longer duration than plaintiff, had achieved greater sales volume. In 1983, prior to his termination, plaintiff had a total sales volume of $198,970. Salesmen with identical 1983 quotas as plaintiff had much lower sales volume than

plaintiff yet they were not terminated from their employment. One of these salesmen was promoted from an account executive to a sales manager or district manager for the St. Louis district.

While employed, plaintiff received sales commissions as compensation through a structured payment plan, dependent upon the type of sale contract involved. In the case of an outright sale, he received one-half of his commission when the contract was accepted by defendant and the balance after the sign was installed and the customer billed. Lease and maintenance contract commissions were paid as follows: "Commission on the lease sale portion of the contract [was] earned and payable on approximately the 15th of the month following acceptance of the contract by the company. *** Commission on the service portion of the contract [was] earned and payable monthly over the life of the contract." As to renewal and maintenance contracts, "[o]ne-half (½) of [the] commission [was] earned and payable on approximately the 15th of the month after [the] contract [went] into service," and the "[r]emaining one-half (½) [was] earned and payable monthly over the life of the contract."

This structured plan was contained in defendant's 1978 written "Pricing and Commission Policy," which was in effect on the date of plaintiff's employment termination. Also contained in the policy was a section related to terminated salesmen and their entitlement to unpaid commissions, which provided:

> *"Change in Status of Salespersons*
>
> Commissions earned over the life of the contract or at the time payment is received from the customer are considered earned at that time, because continued contract between salesperson and customer further assures that the customer will receive and be satisfied with the products and services he has contracted for from [defendant]. Further, this continued contact will promote good-will with the customer and hopefully result in [defendant] being considered for future signage needs of the customer. Therefore, if there is some change in status of the salesperson and he or she is no longer employed by [defendant] or not employed as a salesperson, he or she will not be entitled to commissions earned during the remaining life of the contract ***."

At trial, plaintiff testified that the terms of the policy regarding a former salesperson's commissions were disseminated to him, but were never discussed with him. Brian Madden, a former salesman and district manager for defendant's Chicago district, testified at trial that the 1978 policy had been drafted by the company vice-presi-

dent, Bob Stolmeier. After Madden inquired of Stolmeier the effect of the policy on pending commissions owed to salespersons, Stolmeier advised Madden not to be concerned because the policy was designed solely for salesmen who were "in the red" or who otherwise owed defendant money at the time of their termination.

Plaintiff further testified at trial that his understanding of the policy was that it was designed to deal with changes in status such as retirement, promotion, transfer or death. He never understood the policy as intending to cover terminated salesmen, and at trial defendant had never indicated otherwise. Plaintiff and Madden testified at trial that salesmen were not required to "service" their accounts as a condition of receiving their commissions.

In 1979, defendant distributed an "addition" to its 1978 policy to clarify its terms regarding terminated sales persons. The "addition" to the 1978 policy states the following:

*"Terminated Salesman Commission Policy*

Sales persons who are no longer employed by [defendant] as a sales person whose circumstances are not covered in the preceding paragraph under *Change In Status of Salespersons* are subject to the following with respect to commissions:

1. All commissions relating to maintenance on contracts which are on billing at the time of termination are cancelled effective the first of the month following termination.

2. Outright sales commissions on accepted orders will be paid in full in the ordinary manner i.e. ½ of total commission at order entry and ½ at billing.

3. Lease contract commissions on accepted orders will be paid in the ordinary course, lease commission at order entry. The maintenance commission will be cancelled.

4. Renewal or Maintenance only contracts will be paid in the ordinary course i.e. ½ of total commission on accepted orders will be paid at billing; the second ½ will be cancelled.

5. [Time] and [material] commissions will be paid on accepted and billed orders."

At trial, plaintiff and Madden testified that the 1979 policy addition was never received by them or other salesmen in the Chicago district. Plaintiff stated he first became aware of the policy addition when he received a copy of it at his post-termination hearing before the Illinois Department of Labor. Madden stated that he first became aware of the policy addition three weeks before trial.

Costello testified at trial that the 1979 addition was a clarification of the 1978 policy's terms relating to terminated salesmen and

their right to receive unpaid commissions. He never informed the salesmen in the Chicago district about the policy addition, which was kept in a file drawer in his office. The salesmen did not have access to the policy addition, except by request.

In 1984, defendant revised its "Pricing and Commission Policy." The following is the pertinent part of that policy, with the additions or clarifications in italics:

"CHANGE IN STATUS OF SALESPERSON

Commissions earned over the life of the contract or at the time payment is received from the customer are considered earned *at the time scheduled for payment,* because continued contact between salesperson and customer further assures that the customer will receive and be satisfied with the products and services that he has contracted for from [defendant]. Further, this continued contact will promote goodwill with the customer and hopefully result in [defendant] being considered for future signage needs of the customer. Therefore, if there is some change in status of the salesperson and he or she is no longer employed by [defendant] *(whether at the request of [defendant] or the salesperson),* or not employed as a salesperson, he or she will not earn commissions during the period of the contract remaining after such change except as hereinafter set forth:

\* \* \*

Salespersons who are no longer employed by [defendant] as a salesperson \* \* \* are subject to the following with respect to commissions:

\* \* \*

6. *All commission accruals relating to the remaining one-half of a conditional sale contract are cancelled effective the first of the month following termination since they have not yet been earned."* (Emphasis added.)

The 1984 policy also included a "written confirmation" that was to be signed by each salesperson, acknowledging that he had received, read and fully understood the terms of the policy.

At the time of plaintiff's termination, he was receiving commission payments on approximately 150 contracts representing over $900,000 in sales which he had procured on behalf of defendant. After his termination, plaintiff filed a claim with the Illinois Department of Labor seeking lost commissions. His claim was denied, and he subsequently filed suit in the circuit court of Cook County on February 14, 1985. On May 28, 1985, plaintiff filed an amended two-

count complaint. Count I alleged a breach of contract based upon an oral employment agreement. Count II alleged a breach of contract based upon defendant's sales and pricing commission policy in effect when plaintiff was terminated.

Defendant's motion to dismiss as to count I was granted, and defendant thereafter moved for summary judgment on count II. Count II was stricken by the trial court, and plaintiff was granted leave to file an amended count II, alleging that defendant's pricing and commission policy was applied in bad faith.

On April 15, 1987, plaintiff filed his second-amended one-count complaint alleging that defendant "had an implied obligation under its agreement with [plaintiff] to act in good faith in the application of its Pricing and Commission Policies and in the payment of compensation to Plaintiff," that defendant "terminated [plaintiff's] employment without just cause," and that defendant "terminated [plaintiff] and applied its Commission and Pricing Policies in bad faith in an attempt to avoid the payment of commissions which [plaintiff] would have received had his employment continued." Defendant's motion for summary judgment as to the second-amended complaint was denied.

The parties stipulated at trial that plaintiff's pending commissions totalled $20,410.94. This sum included $19,528.26 in maintenance commissions, plus $1,278.81 for new contract which he had procured prior to his termination, less $396.23 from a cancelled sale. In granting judgment in favor of plaintiff, the trial court deducted from the $20,410.94 in commissions, $2,250, which plaintiff had received as severance pay, leaving unpaid commissions of $18,160.94. The trial court, however, denied plaintiff's request for attorney fees.

■ On appeal, defendant first argues that plaintiff's cause of action for unpaid commissions should not be recognized since plaintiff was an at-will employee and was subject to termination with or without cause, unless the discharge violates a clearly mandated public policy. (*Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 67, 485 N.E.2d 359, 360; *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356; *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 669-70, 384 N.E.2d 91, 95.) While we agree with the general proposition set forth above by defendant, the issue involved in this case does not address itself to a wrongful discharge cause of action, but rather a breach of contract action for unpaid commissions based upon defendant's "Pricing and Commission Policy." No dispute exists that plaintiff was an at-will employee and that defendant could terminate him at any time. Plaintiff's at-will

status, however, does not affect his breach of contract claim for unpaid commissions.

■ Under the procuring-cause rule, it is established that a party may be entitled to commissions on sales made after the termination of employment if that party procured the sales through its activities prior to termination. (*Scheduling Corp. v. Massello* (1987), 151 Ill. App. 3d 565, 503 N.E.2d 806; *Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 474 N.E.2d 744; *Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 438 N.E.2d 599.) This principle of law protects a salesman discharged prior to culmination of a sale, after he has done everything necessary to effect the sale. (*E.g., Heuvelman v. Triplett Electrical Instrument Co.* (1959), 23 Ill. App. 2d 231, 237, 161 N.E.2d 875, 878.) The rule applies unless a contract between the parties expressly provides when commissions will be paid. *Technical Representatives*, 107 Ill. App. 3d at 833, 438 N.E.2d at 602; *Schroeder*, 130 Ill. App. 3d at 560, 474 N.E.2d at 750.

At trial, defendant set forth the 1978 policy as an affirmative defense, contending that the "express terms" of the policy provide a basis for withholding plaintiff's commissions, thus making the procuring-cause rule inapplicable to the instant case. We note that the party who asserts an affirmative defense has the burden of proof and must establish it by a preponderance of the evidence. *Lawrence v. Board of Education of School District 189* (1987), 152 Ill. App. 3d 187, 194, 503 N.E.2d 1201, 1206; *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 102, 462 N.E.2d 924, 929.

■ Here the trial court did not make a specific finding as to defendant's affirmative defense, but merely entered judgment in favor of plaintiff. We are mindful that where the trial court does not make detailed findings of fact, it will be presumed that the trial court found all issues and controverted facts in favor of the prevailing party. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1059, 452 N.E.2d 804, 815.) We therefore presume that since judgment was entered in favor of plaintiff, the trial court found that defendant failed to prove its affirmative defense by a preponderance of the evidence.

Defendant on appeal argues that the trial court's judgment is against the manifest weight of the evidence. We disagree.

■ In reviewing the trial court's finding as to defendant's affirmative defense, we are mindful of the well-established rule that a reviewing court will not substitute its judgment for that of a trial

court in a bench trial unless that judgment is against the manifest weight of the evidence. (*Heavey v. Ehret* (1988), 166 Ill. App. 3d 347, 519 N.E.2d 996; *Lawrence*, 152 Ill. App. 3d 187, 503 N.E.2d 1201; *Scheduling Corp.*, 151 Ill. App. 3d 565, 503 N.E.2d 806; *Schroeder*, 130 Ill. App. 3d 554, 474 N.E.2d 744.) For a finding or judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. *Scheduling Corp.*, 151 Ill. App. 3d 565, 503 N.E.2d 806; *Phillips & Arnold, Inc.* 123 Ill. App. 3d 95, 462 N.E.2d 924; *Wallace v. Weinrich* (1980), 87 Ill. App. 3d 868, 409 N.E.2d 336.

■■ We find that a finding here that defendant did not prove its affirmative defense by a preponderance of the evidence is not against the manifest weight of the evidence.

Plaintiff testified that the terms of the 1978 policy regarding payment of commissions after a salesperson left his employment were disseminated to him, but were never discussed with him. His understanding of the 1978 policy was that it was implemented to deal with changes in status such as retirement, promotion, transfer or death. Furthermore, Madden, a former salesman and district manager for defendant, testified that Bob Stolmeier, who drafted the 1978 policy, had informed him that the 1978 policy was designed solely for salesmen who were "in the red" or otherwise owed defendant money at the time of their termination.

While defendant issued an addition to the terms of the 1978 policy regarding terminated salespersons in 1979, plaintiff, Madden and other sales personnel in the Chicago district never received the 1979 addition and plaintiff did not become aware of the 1979 addition until his post-termination hearing.

Moreover, Costello, defendant's district manager and plaintiff's immediate supervisor, testified that the 1979 addition was a clarification of the 1978 policy's terms relating to terminated salespersons and their right to unpaid commissions. He never apprised the sales people in the Chicago district about the policy addition, which he kept in a file drawer in his office, from which access would have been solely by request.

In 1984, defendant's "Pricing and Sales Commission Policy" was revised. The 1979 additions as well as other clarifications and additions pertaining to terminated salespersons and their right to unpaid commissions were incorporated into the revised policy. Additionally, the 1984 policy included a "written confirmation" that the salesperson was required to sign, acknowledging that he received, read and fully understood the terms of the policy.

In light of the above unrebutted evidence, it is apparent that the terms of the 1978 policy relating to terminated salespersons and their unpaid commissions were susceptible to different conclusions and therefore ambiguous. (See *Bulley & Andrews, Inc. v. Symons Corp.* (1975), 25 Ill. App. 3d 696, 700, 323 N.E.2d 806, 809.) As a consequence of the 1978 policy's ambiguity, a finding that defendant did not prove its affirmative defense and plaintiff is entitled to his commissions under the procuring-cause rule is not against the manifest weight of the evidence.

On plaintiff's cross-appeal, he contends that the trial court erred in denying his prayer for attorney fees brought pursuant to "An Act providing for attorney's fees when mechanic, artisan, miner, laborer or employee sues for wages" (the Act) (Ill. Rev. Stat. 1987, ch. 13, par. 13). The Act provides for reasonable attorney fees to be awarded whenever:

> "[A] mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court *shall* allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 13, par. 13.)

We recognize the Act as being mandatory in nature based upon the use of the term "shall" in the above provisions. None of the case law cited by the parties implies that the Act is discretionary in its application.

Defendant, however, argues that plaintiff's claim is not one for "wages earned and due and owing," and therefore, plaintiff is not entitled to attorney fees under the Act. Defendant asserts that the commissions here were to be received over a period of time, thus akin to "back pay," and not wages earned, due and owing. In *Reiss v. El Bauer Chevrolet Co.* (1968), 96 Ill. App. 2d 266, 238 N.E.2d 619, where two automobile salesmen brought suit to recover bonuses due them based on the amount of sales made during a year, the defendant similarly argued that the salesmen's claims were not for wages earned, due and owing. The *Reiss* court found no merit in defendant's contention, stating that "[t]he method of payment is not

controlling in determining whether a sum is wages," and awarded plaintiffs reasonable attorney fees. *Reiss*, 96 Ill. App. 2d at 271, 238 N.E.2d at 622.

■ Similar to the plaintiffs in *Reiss*, plaintiff here brought a claim for wages earned, due and owing in the form of unpaid commissions. We find no just reason to deny plaintiff attorney fees in light of the *Reiss* holding. As a result of *Reiss*, it is clear that a salesman is an "employee" under the Act and that commissions and bonuses are wages earned, due and owing. See *Johnson v. Figgie International, Inc.* (1986), 151 Ill. App. 3d 496, 509, 502 N.E.2d 797, 806.

We also believe that defendant's reliance on *Thaxton v. Walton* (1983), 122 Ill. App. 3d 266, 461 N.E.2d 476, *rev'd on other grounds* (1985), 106 Ill. 2d 513, is misplaced. In *Thaxton*, the plaintiff brought a wrongful discharge cause of action for reinstatement and back pay from the date of his termination. The court refused to award attorney fees on the grounds that plaintiff's claim was one for damages arising from an improper discharge rather than for wages earned due and owing under the Act. (*Thaxton*, 122 Ill. App. 3d at 271, 461 N.E.2d at 479.) The case before us is not based upon a wrongful discharge cause of action, and plaintiff is not seeking damages for his termination or reinstatement. To the contrary, plaintiff here is seeking unpaid commissions for work actually performed.

■ Defendant next asserts that plaintiff failed to make a proper written demand as required under the Act. Plaintiff filed a written wage claim with the Illinois Department of Labor, and defendant subsequently received notice of this claim from the Department on December 19, 1983. Plaintiff's compliance with the statutory procedures for collection of wages, in effect, gave notice and demand of the wages due him. We believe this was sufficient here to meet the Act's statutory notice requirement.

Defendant's final argument is that plaintiff's demand was for an amount in excess of his damages recovered at trial in contravention of the Act. Plaintiff claimed he was owed $1,400 plus $15,000 to $18,000 for unpaid commissions. The parties at trial stipulated that the amount of plaintiff's pending commissions was $20,410.94. From that amount, a discretionary severance amount of $2,250 was deducted. Accordingly, the trial court entered judgment in favor of plaintiff in the amount of $18,160.94, plus interest on that sum from the date of plaintiff's termination, August 5, 1983.

■ Even assuming that plaintiff's demand was in the maximum amount of $19,400 ($1,400 plus $18,000), the wages earned, due and

owing here were actually in the amount of $20,410.94. Moreover, the ultimate judgment amount of $18,160.94, plus interest, is clearly in excess of the presumed maximum amount of the $19,400 demand figure. Accordingly, we conclude that plaintiff has fulfilled the Act's requirements and is therefore entitled to reasonable attorney fees.

Based upon the foregoing, we affirm the trial court's judgment awarding plaintiff $18,160.94 for unpaid commissions and reverse and remand as to the trial court's denial of plaintiff's request for attorney fees.

Affirmed in part; reversed in part and remanded.

MANNING, P.J., and CAMPBELL, J., concur.