PAUL D. SWANSON, Plaintiff-Appellant and Cross-Appellee, v. THE VILLAGE OF LAKE IN THE HILLS, Defendant-Appellee and Cross-Appellant.

Second District No. 2—91—1260

Opinion filed August 14, 1992.

Michael K. Havrilesko, of Havrilesko & Associates, of Rockford, for appellant.

Dolores A. Duffy, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Paul D. Swanson, brought an action in November 1987 against his employer, Village of Lake in the Hills (defendant), for accrued vacation pay pursuant to the Wage Payment and Collection Act (Ill. Rev. Stat. 1987, ch. 48, par. 39m—5), disability pay pursuant to the Public Employee Disability Act (Ill. Rev. Stat. 1987, ch. 70, par. 91) and attorney fees pursuant to the Attorneys Fees in Wage Actions Act (Ill. Rev. Stat. 1987, ch. 13, par. 13). The trial court held that defendant owed plaintiff $1,806.25 in accrued vacation pay and $3,103.02 in disability pay, but denied plaintiff's request for attorney fees.

Plaintiff appealed the trial court's denial of attorney fees, and defendant cross-appealed the trial court's award of vacation and dis-

ability pay. Three issues are therefore raised: (1) whether the trial court erred in awarding plaintiff $1,806.25 in accrued vacation pay; (2) whether the trial court erred in awarding plaintiff $3,103.02 in disability pay; and (3) whether the trial court erred in denying plaintiff's request for statutory attorney fees. We affirm.

A one-day bench trial took place on January 14, 1991, during which five witnesses testified. The following is a summary of the evidence and testimony. Plaintiff was employed by defendant as a police officer from December 1978 until January 31, 1987, when he was terminated. On August 24, 1986, plaintiff was treated at the Good Shepherd Hospital emergency room in Barrington for a severe headache, associated with nausea, vomiting and passing out. Dr. Zbigniew Lorenc treated and interviewed plaintiff. Plaintiff told Dr. Lorenc that for several months he had had substantial difficulties with his immediate supervisor at work and that he was experiencing severe stress and headaches as a result of his work. Dr. Lorenc diagnosed plaintiff as suffering from severe muscle contraction headaches. Various tests ordered by Lorenc, such as blood tests, a CAT scan of the brain, and X rays of the neck, sinuses and facial bone, revealed no other probable causes for the headaches. Plaintiff was also treated by Dr. Greek, a neurologist, who ordered a cerebral angiogram to rule out aneurysms as a cause. Dr. Lorenc prescribed an analgesic medication and physical therapy during plaintiff's four-day hospitalization and for several weeks thereafter.

Dr. Lorenc testified that when plaintiff was hospitalized, he was clearly disabled. Lorenc ordered plaintiff to refrain from work until December 2, 1986. During the time that plaintiff was off work, Lorenc stated that plaintiff's headaches diminished and became more tolerable. On October 2, 1986, Lorenc authored a letter advising that plaintiff could return to work on either December 1, 1986, or January 1, 1987.

According to Dr. Lorenc, muscle contraction headaches are usually supported with physical findings. Lorenc also stated that the more intense the headache, the more physical findings are present. Lorenc stated that he made physical findings as to plaintiff which are typical of severe headaches, including tight tender muscles in the back of the neck, back of the head and along the temples, and great deprivation of sleep.

Plaintiff attempted to return to his work as a police officer on December 2, 1986. Dr. Lorenc testified that upon returning to his work plaintiff's headaches recurred and became "very intense." According

to Lorenc, plaintiff suffered recurrence of "significant spasm in his muscles in the back of his head [and] neck."

Dr. Lorenc concluded that plaintiff had fairly tried to return to work, but that his returning to the work environment exacerbated plaintiff's headaches such that "he could not perform his police duties." Lorenc opined that plaintiff's return to work "brought [his headaches] almost to the same level as they were prior to his hospitalization in August." Lorenc further opined that returning plaintiff to the work place under the circumstances would be detrimental to plaintiff's health.

Dr. Lorenc testified that, in his medical opinion, he "felt very strongly" that plaintiff's headaches were causally related to his employment: that the headaches were intense; that when he was ordered off work, his headaches gradually subsided over time; that when he returned to work, his headaches markedly increased; and when he was off police work the second time, and worked as a carpenter, his headaches again subsided. Lorenc testified that an injury does not necessarily result from physical trauma, but may result from other causes such as mental abuse. He opined that plaintiff's headaches resulted from mental abuse at work.

Dr. Lorenc opined that, to a reasonable degree of medical certainty, the following circumstances surrounding plaintiff's employment as a police officer were causally related to plaintiff's headaches: his suspension from employment based on the death of a prisoner; thereafter receiving punitive or demeaning duties and frequent criticism from his superior, the chief of police; his experiencing headaches when confronted by his superior in the work place; an internal investigation of his culpability in the prisoner's death; involvement in a dangerous crossfire situation; experiencing headaches during the cross-fire situation and thereafter being hospitalized with headaches.

Plaintiff's testimony paralleled that of Dr. Lorenc. Plaintiff was earning $495 per week as a Village police officer at the time in question. Plaintiff testified that, at some point after he was terminated in January 1987, he made a request in writing to defendant for payment of his accrued vacation pay. Plaintiff did not introduce a copy of this alleged letter into evidence. In a written response dated March 3, 1987, defendant agreed that plaintiff had accrued 18 vacation days at the time of his termination in January 1987. However, defendant stated that plaintiff's vacation pay was offset by 18 days of administrative leave he received from December 2 through December 20, 1986. Defendant's letter concluded that "it would appear that you neither owe the Village nor the Village owes you any money."

A copy of defendant's personnel rules was introduced into evidence. A section on termination reads, in pertinent part: "Upon termination of employment, the employee shall be paid for any unused vacation time."

Plaintiff testified that in March 1987 he wrote a letter to the Department of Labor (Department) requesting payment of his accrued vacation pay and $900 in disability compensation from defendant. However, plaintiff did not introduce a copy of this letter into evidence. The Department of Labor sent plaintiff a letter dated March 26, 1987, stating that the Department had received plaintiff's letter and forwarded the claim to defendant for a response. On May 11, 1987, the Department sent plaintiff another letter and a copy of defendant's response to plaintiff's claims. Defendant's response acknowledged receipt of plaintiff's claim. However, defendant claimed that plaintiff's 18 days of accrued vacation time was credited against an overpayment of 18 days. The response generally denied defendant's claims. Plaintiff stated that he filed a reply to defendant's response, asking the Department to "take steps within your means to see that the Village of Lake in the Hills pays me the salary that they agreed to pay me, and *** vacation benefits." A copy of this undated letter was introduced into evidence.

Plaintiff also testified that in January 1987 his attorney at the time sent defendant a written demand for vacation and disability pay. Plaintiff did not introduce a copy of this alleged letter into evidence. Defendant responded to plaintiff's claim for disability pay in a letter dated February 6, 1987, and to plaintiff's claim for vacation pay in a letter dated February 19, 1987. Both letters denied plaintiff's claims.

By written stipulation of the parties, plaintiff began working as a carpenter for Welcome Home Corporation on or about December 8, 1986.

The three remaining witnesses testified as follows. Deborah Tipps, a supervisor at Aetna Insurance, testified that plaintiff was on 60% disability pay from August 31, 1986, through February 23, 1987. Wendy Cichowski, defendant's treasurer, identified copies of payroll checks made out to plaintiff for October and December 1986.

James A. Wales, defendant's chief of police, testified that he ordered plaintiff to undergo a psychological evaluation on December 2, 1986, to determine his fitness for duty. Wales based this order on a statement plaintiff made at an administrative hearing conducted by Wales in August 1986, the topic of which was plaintiff's conduct during a police response to a shooting incident. Plaintiff had stated there that during the incident he was unsure how he might react and be-

lieved that "he was walking on eggshells." Pending receipt of the psychological evaluation, Wales placed plaintiff on administrative leave. Wales received the evaluation on December 20, at which time he filed termination charges with the police commission. As a result and on that same day, the commission suspended plaintiff without pay for 30 days pending a hearing on the matter. One month later, the commission suspended plaintiff for another 30 days, but with pay, pending completion of the hearing. On January 31, 1987, the police commission terminated plaintiff's employment as a police officer. On cross-examination, Wales conceded that neither the 18-day administrative leave period between December 2 and 20, 1986, nor the period between January 20 and January 31, 1987, was a vacation period for plaintiff.

In a five-page memorandum opinion dated April 19, 1991, the trial court determined that plaintiff was entitled to be paid for 18¼ days' accrued vacation in the amount of $1,806.25 and $3,226.14 in back salary. The latter amount was corrected in a later order to read $3,103.02. The court reviewed the relevant statutes and case law and determined that plaintiff's headaches were injuries during the line of duty and during the course of employment. The court calculated plaintiff's wages for the 14-week-and-one-day period (from August 24, 1986, to December 2, 1986) and then credited the disability payments he had been receiving. The trial court rejected plaintiff's request for attorney fees, stating "the Court agrees with [defendant] that [plaintiff] has not complied with the statute[ ] in every particularity and therefore has not established that he is entitled to recover attorneys fees. [Citing *Caruso v. Board of Trustees of the Public School Teachers' Pension & Retirement Fund* (1984), 129 Ill. App. 3d 1083, 1087.]"

## VACATION PAY

At issue is whether the trial court erred in awarding $1,806.25 for 18¼ days of accrued vacation pay to plaintiff. Plaintiff argues that the trial court's decision is supported by the evidence. Defendant argues that plaintiff's 18 days of administrative leave pay between December 2 and December 20 should be credited against plaintiff's accrued vacation time.

We initially note that both parties limited their argument to arguments of fact based on the evidence. We are therefore bound to grant deference to the trial judge's decision, as he was the trier of fact. (*Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 433-34.) A court of review will defer to the trial court's factual findings unless

they are against the manifest weight of the evidence. (*Kalata,* 144 Ill. 2d at 433.) The reviewing court must not substitute its judgment for that of the trier of fact. *Kalata,* 144 Ill. 2d at 434.

■ We find that evidence in the record supports the trial court's award. There is no dispute that plaintiff accrued 18¼ days of vacation. Based on a weekly salary of $495, that translates to a figure of $1,806.75 in accrued vacation pay. The trial judge arrived at the same amount on page one of his April 19, 1991, memorandum opinion. We note that on page five of the memorandum, the amount was apparently mistakenly typed as $1,806.25 rather than $1,806.75. We choose to disregard this minor discrepancy.

We are not persuaded by defendant's argument that plaintiff's administrative leave pay should be credited against his vacation pay. Plaintiff earned 18¼ days of vacation, and defendant therefore owed plaintiff 18¼ days in pay when it terminated him. (See Ill. Rev. Stat. 1987, ch. 48, par. 39m—5 (final compensation for terminated employee shall include accrued vacation pay).) The fact that defendant chose to place plaintiff on administrative leave from December 2 through December 20 is not a proper consideration in that regard. We find no error by the trial court regarding its award of $1,806.25 in accrued vacation pay to plaintiff.

### DISABILITY PAY

At issue is whether the trial court erred in awarding $3,103.02 in disability pay to plaintiff. Plaintiff argues that the trial court's decision should be affirmed since it is not against the manifest weight of the evidence. Defendant argues that plaintiff's stress headaches should not be compensable injuries in the line of duty under Illinois law.

A reviewing court will not reverse a ruling following a bench trial unless the judgment is against the manifest weight of the evidence. (*Bruss v. Klein* (1991), 210 Ill. App. 3d 72, 78.) "The trial judge, as the trier of fact, is in a position superior to a court of review to observe the demeanor of witnesses while testifying, to judge their credibility and to determine the weight their testimony should receive." (*In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 549.) An opposite conclusion must be clearly evident for a finding or judgment to be against the manifest weight of the evidence. *Bruss,* 210 Ill. App. 3d at 78.

As a first step, we review the trial court's decision on this issue. In the April 19, 1991, opinion memorandum, the trial judge summarized Dr. Lorenc's unrebutted testimony and concluded:

"Based upon the record before it, the Court finds that [plaintiff] suffered from a non-traumatic injury arising out of and in the course of his employment as a police officer for the Village of Lake in the Hills by reason of the severe muscle contraction headaches which were caused primarily by the stress from the interpersonal relationship between [plaintiff] and his superior[,] Chief of Police Wales."

The trial court then considered whether the above finding qualified plaintiff to receive compensation benefits under the Public Employee Disability Act (Ill. Rev. Stat. 1987, ch. 70, par. 91), which states in pertinent part:

"Whenever any law enforcement officer *** suffers *any injury in the line of duty which causes him to be unable to perform his duties,* he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation ***.

***

During this period of disability, the injured person shall not be employed in any other manner, with or without monetary compensation. Any person who is employed in violation of this paragraph forfeits the continuing compensation provided by this Act from the time such employment begins. Any salary compensation due the injured person from workers' compensation or any salary due him from any type of insurance which may be carried by the employing public entity shall revert to that entity during the time for which continuing compensation is paid to him under this Act." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 70, par. 91.

Since no reviewing court had interpreted the phrase "injury in the line of duty" in the context of the Public Employee Disability Act, the trial judge reviewed interpretations of similarly worded statutes such as the police pension funds statute, which includes a lengthy definition of the phrase "act of duty." (Ill. Rev. Stat. 1987, ch. 108½, par. 5—113.) The court noted that several courts of review concluded that headaches and stress type conditions involving police officers do not qualify a police officer for a line-of-duty pension under the police pension funds statute, citing *Batka v. Board of Trustees of the Village of Orland Park Police Pension Fund* (1st Dist. 1989), 186 Ill. App. 3d 715, *Wall v. Police Pension Board of the Village of Schaumburg* (1st Dist. 1988), 178 Ill. App. 3d 438, and *Olson v. City of Wheaton Police Pension Board* (2d Dist. 1987), 153 Ill. App. 3d 595. However, the

trial court found this line of cases to be of little value since the Public Employee Disability Act "contains no definition of terms and certainly no restrictive definition such as [section 5—113]." The court also noted that in *Olson* and *Batka* the police officers were awarded "not on duty" pension rights and that in *Wall*, the police officer was denied any pension, in part, because none of the police officer's doctors would even speculate whether the officer's stress was job related. The trial court then concluded that plaintiff had in this case established that he is entitled to benefits under the Public Employee Disability Act.

Finally, the trial court determined the amount and duration of the benefits. The court determined that plaintiff was eligible for disability pay from August 24 through December 2, when plaintiff was placed on administrative leave. This 14-week-and-one-day period was then multiplied by plaintiff's $495 weekly salary, to arrive at a figure of $7,029. The court then credited the amount plaintiff had received under defendant's disability insurance policy, which the court found to be $3,925.98, resulting in a final amount due of $3,103.02. While this court is uncertain how the trial court arrived at the precise figure that plaintiff had received under the disability insurance policy during the 14-week-and-one-day period, our review of the insurance policy disbursement data suggests that the $3,925.98 figure is correct.

■ We believe that the trial court properly applied the Public Employee Disability Act to the facts of this case. Plaintiff's testimony and the unrebutted testimony of Dr. Lorenc provides evidence that plaintiff suffered an injury in the line of duty which caused him to be unable to perform his duties. The trial court properly calculated the amount of the disability compensation as being up until December 2, 1986, the point defendant began receiving full salary while on administrative leave. The trial court also properly credited the amount of disability insurance payments that plaintiff had received.

Defendant's arguments to the contrary are unpersuasive. Defendant urges this court to find that plaintiff's "complaints are no more than the everyday pressures of life." Defendant posits that plaintiff's line of duty as a police officer is to protect and serve the public, citing *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1986), 114 Ill. 2d 518, and that his "personal relationship with his superior has nothing to do with his duty to protect and serve." Defendant asks this court to analyze this case under police pension case law such as *Johnson* (114 Ill. 2d 518), *Batka* (186 Ill. App. 3d 715), *Wall* (178 Ill. App. 3d 438), and *Olson* (153 Ill. App. 3d 595). However, we agree with the trial court that those cases are of little

value since they are based on the more restrictive pension law. We find no error by the trial court regarding its award of $3,103.02 in disability pay to plaintiff.

ATTORNEY FEES

At issue is whether the trial court erred in denying plaintiff's request for attorney fees pursuant to the Attorneys Fees in Wage Actions Act (Ill. Rev. Stat. 1987, ch. 13, par. 13). Section 1 of that act states:

> "Whenever a mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, *and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing*, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 13, par. 13.

In essence plaintiff argues that even though he did not produce a copy of the letter he allegedly sent defendant claiming back wages and vacation pay, "the preponderance of the evidence established that [he] complied with the notice requirement" of the above Act. In particular, plaintiff directs this court to his allegations, supported by subsequent letters in evidence, that he sent claim letters to both defendant and to the Department of Labor. Defendant responds that plaintiff never introduced into evidence a copy of any letter that he sent to the Village which included a demand specifying an amount due.

Our analysis is governed by the well-accepted rule that the attorney fees act at issue must be considered in derogation of the common law and is therefore to be strictly construed. (*Caruso*, 129 Ill. App. 3d at 1087; *Howard A. Koop & Associates v. K P K Corp.* (1983), 119 Ill. App. 3d 391, 404-06.) The "statute must be complied with in every particular to entitle the plaintiff to recover attorney fees." *Caruso*, 129 Ill. App. 3d at 1087.

After reviewing the record before us and the attorney fees act, we believe the trial judge properly denied plaintiff's request for attorney fees. The cardinal rule of statutory construction is to determine and give effect to the legislature's intent. (*Sulser v. Country*

*Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 555.) Inherent in the Act's requirement that the employee make a written demand for a sum is that the demand be made directly to the *employer* and for a certain sum not exceeding the amount found due and owing. Surely the legislature intended this Act to give recourse to the employee who filed a written demand for a certain wage sum directly with his employer but to no avail, and then had to seek an alternative remedy in the courts.

We do not believe that plaintiff met his burden of presenting evidence that he sent such a written demand to defendant at least three days prior to suit. We have carefully reviewed the testimony and evidence, including copies of letters from defendant's attorneys to plaintiff regarding vacation pay, letters from the Department of Labor to plaintiff regarding his claim, a letter from defendant to the Department regarding plaintiff's claim, and an undated letter from plaintiff to the Department allegedly sent in reply to defendant's response to plaintiff's claim. We do not place great weight on any of the correspondence regarding plaintiff's claim with the Department because none are evidence of written claim made by plaintiff directly to his employer. We place no weight on the two letters from plaintiff's attorney to defendant's attorney in February and May 1988 since both were sent after the lawsuit was filed. We conclude that plaintiff failed to supply adequate evidence of a written demand to defendant which specified an amount of wages that he claimed was due and owing, which was sent at least three days prior to filing suit. We therefore agree with the trial court's denial of plaintiff's request for statutory attorney fees.

In so holding, we choose not to follow *Schackleton v. Federal Signal Corp.* (1989), 196 Ill. App. 3d 437, where the Appellate Court, First District, held that an employee's filing of a claim with the Illinois Department of Labor at least three days prior to filing suit sufficiently complied with the notice requirement of the Attorneys Fees in Wage Actions Act (Ill. Rev. Stat. 1987, ch. 13, par. 13). (*Schackleton,* 196 Ill. App. 3d at 447.) The *Schackleton* court reasoned that since the employer subsequently received notice from the Department, "[p]laintiff's compliance with the statutory procedures for collection of wages, in effect, gave notice and demand of the wages due him." (*Schackleton,* 196 Ill. App. 3d at 447.) We believe a better interpretation of the Attorneys Fees in Wage Actions Act is that it requires the employee to make a written demand *directly to the employer* at least three days prior to filing suit for a sum not exceeding the amount

found due and owing. We find no error in the trial court's denial of plaintiff's request for statutory attorney fees.

For the above reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

McLAREN and DUNN, JJ., concur.